**Lawron Eugene COLEMAN, Appellant,**

v.

**The STATE of Texas.**

No. 0491–96.

Court of Criminal Appeals of Texas, En Banc.

April 1, 1998.

Robert J. Reagan, Dallas, for appellant.

Kimberly Schaefer, Assistant District Attorney, Dallas, Matthew Paul, State's Attorney, Betty Marshall, Assistant State's Attorney, Austin, for State.

## OPINION ON STATE'S MOTION FOR REHEARING

MANSFIELD, Judge, delivered the opinion for the Court.

Both the State and the State Prosecuting Attorney have filed motions for rehearing in this case. Believing now that we erred in our opinion on original submission, we withdraw that opinion and substitute the following.

We originally granted the State's petition for discretionary review to determine whether the Tenth Court of Appeals[1] had erred in holding that the 283rd District Court of Dallas County had violated appellant's Sixth Amendment right to compulsory process.[2] We hold now that the Tenth Court of Appeals did err.

### *The Relevant Facts*

In the fall of 1993, appellant was a member of the "Oak Cliff Mafia" street gang in Dallas. On November 24, 1993, members of a

rival gang, the "Junior Homeboys," carried out a drive-by shooting in which appellant's younger brother was seriously wounded. On November 30, 1993, Victor Manuel Alvarez, a member of the "Junior Homeboys," was himself killed in a drive-by shooting. The Dallas County Grand Jury later indicted appellant for the intentional murder of Alvarez. See Tex. Penal Code § 19.02(b)(1).[3]

At trial in the 283rd District Court, appellant put forth two defenses. First, he admitted shooting Alvarez, but he denied he had had the intent to kill. Second, he argued that even if the jury believed he had intended to kill Alvarez, it should still find him guilty only of voluntary manslaughter, because he had acted under the immediate influence of sudden passion arising from the shooting of his brother.[4] In furtherance of both defenses, appellant, during trial, applied for, and caused to be issued, subpoenas *ad testificandum* for two reporters on the staff of *The Dallas Morning News* newspaper. See Tex. Code Crim. Proc. art. 24.03(a). The reporters, however, promptly filed a joint motion to have the subpoenas quashed on the basis of a claimed First Amendment privilege.[5]

The District Court held a hearing on the motion to quash shortly after the State rested at the guilt/inocence stage. At that hearing, the reporters elaborated on the legal argument they had made in their motion, but they presented no evidence. Appellant opposed the reporters' motion by arguing that their testimony would be crucial to his defense:

> As the court is well aware of, the whole contribution of the defense in this case deals with the state of mind of the defendant, and the purpose of subpoenaing the reporters is the fact they've done an exten-

---

1. The Texas Supreme Court transferred the case from the Fifth Court of Appeals to the Tenth Court of Appeals. See Tex. Gov't Code § 73.001.

2. The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor." This right to compulsory process was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Washington v. Texas,* 388

U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967).

3. At the time of appellant's offense, intentional murder was prohibited by Texas Penal Code § 19.02(a)(1).

4. The voluntary manslaughter statute was repealed in 1994.

5. No such privilege exists. *Healey v. McMeans,* 884 S.W.2d 772, 775 (Tex.Crim.App.1994).

sive amount of investigative work concerning the two so-called gangs that we have involved in this. They have done extensive research talking to witnesses, talking in the neighborhood, and they're well aware of the atmosphere that was present at the time that allegations against this defendant came forth. And, therefore, it is the defense's position that they could enlighten this jury as to the atmosphere out there that could relate back to the state of mind of this defendant, which is a very critical issue in this case.

Appellant cited no specific statutory or constitutional provision in support of his position, but he did offer in evidence the two subpoenas and an article, written by one of the reporters, from the January 9, 1994, edition of *The Dallas Morning News*. The article discussed the history and culture of the "Junior Homeboys," and it included a brief discussion of the killing of Alvarez.

At the conclusion of the hearing, the District Court granted the motion to quash, but it gave no explanation for its decision. The jury later convicted appellant of murder and assessed his punishment at imprisonment for 25 years and a $10,000 fine.

Appellant brought six points of error in his brief to the Tenth Court of Appeals. He argued in his first and second points that the District Court had violated his Sixth Amendment right to compulsory process when it granted the motion to quash.[6] After a rather complicated analysis, the Court of Appeals agreed with appellant's Sixth Amendment claim, reversed the judgment of the District Court, and remanded the case for retrial. *Coleman v. State*, 915 S.W.2d 80, 87 (Tex. App.—Waco 1996). More specifically, the Court of Appeals held that (1) no First Amendment privilege existed, (2) the reporters in question had had the burden of showing some basis on which to quash the subpoe-

nas, (3) the reporters had failed to carry that burden, (4) the District Court had therefore violated appellant's Sixth Amendment right to compulsory process, and (5) no harmless error analysis was possible. *Id.* at 84, 86–87.

We subsequently granted the State's petition for discretionary review to consider whether the Court of Appeals had erred in its Sixth Amendment analysis. See Tex. R.App. Proc. 66.3(c). The State argues now that (1) under the Sixth Amendment Compulsory Process Clause, appellant had the burden of showing in the District Court that the testimony of the witnesses he sought would be both material (*i.e.*, relevant and important, and not merely cumulative) and favorable to his defense, and (2) appellant failed to carry that burden. Appellant argues in response that (1) the mere fact that he obtained the subpoenas amounted to a *prima facie* showing of materiality because, under Article 24.03(a), an application for a subpoena must include a sworn statement that the testimony of the witness sought would be material to the defense, and (2) at the hearing on the motion to quash, he established the materiality of the reporters' expected testimony when he explained what they would testify about and how their testimony would relate to his defense.

### Analysis

■ The Sixth Amendment right to compulsory process "is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). The Sixth Amendment does not guarantee, however, the right to secure the attendance and testimony of any and all witnesses; rather, it guarantees only compulsory process for obtaining witnesses

**6.** Since appellant did not rely upon the Sixth Amendment in the District Court, he did not preserve a Sixth Amendment complaint for appellate review. See Tex.R.App. Proc. 33.1(a)(1)(A); *Robinson v. State*, 851 S.W.2d 216, 222, 225 (Tex.Crim.App.1991), *cert. denied*, 512 U.S. 1246, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994); G. Dix & R. Dawson, *Texas Criminal Practice and Procedure* § 42.02 (1995). Never-

theless, the Court of Appeals addressed his Sixth Amendment complaint. We express no opinion on the propriety of the Court of Appeals' action. But see *Hughes v. State*, 878 S.W.2d 142, 151 (Tex.Crim.App.1992) (requirement that error be preserved is a "systemic" one), *cert. denied*, 511 U.S. 1152, 114 S.Ct. 2184, 128 L.Ed.2d 902 (1994).

whose testimony would be both material and favorable to the defense. *United States v. Valenzuela–Bernal,* 458 U.S. 858, 866–67, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982). To exercise the federal constitutional compulsory process right, the defendant must make a plausible showing to the trial court, by sworn evidence or agreed facts, that the witness' testimony would be both material and favorable to the defense. *Ex parte Scarbrough,* 604 S.W.2d 170, 173–174 (Tex.Crim.App. 1980); *Perez v. State,* 590 S.W.2d 474, 479 (Tex.Crim.App.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2157, 64 L.Ed.2d 790 (1980); *Spencer v. State,* 503 S.W.2d 557, 560–561 (Tex.Crim.App.1974); *Jones v. State,* 501 S.W.2d 677, 679 (Tex.Crim.App.1973); *Hardin v. State,* 471 S.W.2d 60, 62–63 (Tex.Crim. App.1971); accord, *United States v. Mejia–Uribe,* 75 F.3d 395, 399–400 (8th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 151, 136 L.Ed.2d 97 (1996); 22A C.J.S. *Criminal Law* § 473 (1989). A defendant who has not had an opportunity to interview a witness may make the necessary showing by establishing the matters to which the witness might testify and the relevance and importance of those matters to the success of the defense. See *United States v. Valenzuela–Bernal,* 458 U.S. at 869–71, 102 S.Ct. at 3448. Were the burden of showing materiality and favorableness not placed on the defendant, "frivolous and annoying requests [c]ould make the trial endless and unduly burdensome on the Court and all officers thereof." *Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir.1983).

■ On the record before us, it is clear that appellant did not make the necessary showing. Although he argued vaguely to the District Court that the reporters could "enlighten" the jury "as to the atmosphere" in Dallas "that could relate back to [his] state of mind" when he shot Alvarez, he made no plausible showing to the court that the reporters' testimony would actually be *material* and *favorable* to either of his defensive theories. Absent such a showing, the Sixth Amendment did not require the District Court to compel the reporters to testify. The Court of Appeals erred in holding otherwise.

Accordingly, we VACATE the judgment of the Court of Appeals and REMAND the case to that court so that it may consider appellant's remaining points of error.

OVERSTREET, J., filed a dissenting opinion, in which BAIRD, J., joined.

MEYERS, J., not participating.

OVERSTREET, Judge, dissenting on state's rehearing.

On original submission, by a 5–3 vote, we upheld the Tenth Court of Appeals' holding that the trial court reversibly erred in granting a motion to quash appellant's subpoenas of two newspaper reporters. However, after granting motions for rehearing filed by both the District Attorney and the State Prosecuting Attorney, we now reverse ourselves and conclude that there was no error in quashing the subpoenas. Because I think that we had it right the first time, I respectfully dissent to this Court's sudden about-face.

On original submission, we held that subpoenaed witnesses, i.e. in this case the reporters, have the burden "to come forward with evidence, either live testimony or affidavit, in support of their motion to quash[.]" *Coleman v. State,* (Tex.Cr.App. No. 491–96, delivered April 30, 1997, slip op. at 7). Thus the Waco Court of Appeals did not err in holding that because the reporters failed to come forward with such evidence the trial court erroneously granted their motion to quash. *Id.* As we indicated on original submission, that holding is quite consistent with existing law. However, on rehearing, a majority of this Court chooses to "modify" our interpretation of existing law.

On rehearing, this Court holds that the defendant has the burden of showing materiality and favorableness as to the subpoenaed witnesses' prospective testimony, and that "it is clear that appellant did not make the necessary showing." *Coleman v. State,* 966 S.W.2d 525, 528 (Tex.Cr.App.1998) (op. on reh'g). What of our previous holding on original submission that the reporters had the burden to come forward with evidence in support of their motion to quash?

The majority states that "[a] defendant who has not had an opportunity to interview a witness may make the necessary showing by establishing the matters to which the witness might testify and the relevance and importance of those matters to the successes of the defense." *Id.* However, in light of the fact that a witness is not required to even talk with the defendant or his attorneys, such a showing may be quite difficult, if not impossible, when a prospective witness refuses to be interviewed. That is what the subpoena is for—to get the witness into court so that he can be questioned. If a defendant has been unable to interview a prospective witness, how is he going to know specifically what the witness knows? And as the majority opinion notes, appellant did argue to the trial court that the reporters could enlighten the jury as to the atmosphere in Dallas that could relate back to his state of mind. Obviously, he was referring to the rival gang activities since the subject matter of the reporters' newspaper articles was such gang activity and violence. There was nothing mysterious or cryptic about the basis of appellant's desire for these reporters to testify. This case involved rival gang activity, and the reporters had written articles thereon. Without being able to force the reporters to submit to an interview, such is the best showing appellant could make.

How does one acquire the information necessary to make the showing of materiality and relevance? Pursuant to the majority's opinion on rehearing, obviously not via compulsory process subpoena. Perhaps via crystal ball or psychic hot-line?

In light of the facts of this case, and the reporters' newspaper articles involving the rival gangs, I believe that appellant made a sufficient showing to justify his subpoenas, and that because the reporters failed in their burden to support their motion to quash, I believe appellant was entitled to have his subpoenas enforced. Because the majority of this Court now concludes otherwise, I respectfully dissent.

BAIRD, J., joins.