**Shad Edward LUVANO, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–04–00218–CR.**

Court of Appeals of Texas, Eastland.

Feb. 2, 2006.

Rehearing Overruled March 1, 2006.

---

Kenneth G. Leggett, Gravley & Leggett, PLLC, Attorneys At Law, Abilene, for appellant.

James Eidson, District Attorney, Patricia Dyer, Assistant Criminal District Atty's Office, Abilene, for appellee.

Panel consists of: WRIGHT, C.J., and McCALL, J., and STRANGE, J.

**OPINION**

RICK STRANGE, Justice.

The jury convicted Shad Edward Luvano of capital murder. Punishment was assessed at life. Appellant asserts that the trial court erred in not allowing him to (1) test DNA samples collected by the State at the crime scene and (2) collect and test a DNA sample of a witness. We affirm.

*Background Facts*

On March 9, 2003, the victim's body was discovered in his Abilene apartment. A police investigation determined that the victim was stabbed multiple times in the upper torso and neck while sitting in his recliner.

Appellant was identified as a suspect in the crime. The police located appellant and his girlfriend Misty Rodriguez in Room 116 of the Century Lodge. Rodriguez consented to a search of their room. The police discovered several pieces of clothing during the search, including a pair of denim pants and a white shirt both stained with blood. DNA testing indicated that the blood found on this clothing matched the victim's DNA.

After taking appellant into custody, the police interviewed Rosie Applin, who was staying in Room 112 of the Century Lodge. On the night of the murder, she had loaned a sword to appellant. When she asked why he wanted to borrow the sword, appellant told her that he was going to kill or "shank" somebody.[1] When appellant returned to the Century Lodge the next morning, Applin noticed that his jeans and shirt were bloody. She also noticed that the sword, which appellant returned to Applin, was covered in what looked like blood. DNA testing indicated that the blood on the sword belonged to the victim.

Detectives Jeff Bell and James David Atkins of the Abilene Police Department interviewed appellant after his arrest. Appellant called his mother during the interview and told her that he killed the victim. After talking to his mother, appellant admitted to the detectives that he stabbed

---

1. Applin testified that "shank" means to cut or stab somebody.

the victim because the victim insulted his mother. Appellant also consented to a television interview during which he again confessed to killing the victim.

The State charged appellant with capital murder. Rodriguez, although charged with aggravated robbery,[2] was not indicted in the capital murder case. Rodriguez was called to testify during the trial and asserted her Fifth Amendment right against self-incrimination.

Appellant testified in his own defense. Appellant first testified that he went with Rodriguez to the victim's apartment to sell him swords and that an argument between himself and the victim escalated into a fight. Appellant further testified that, during the fight, he stabbed the victim in the neck with his pocketknife and that the stabbing was in response to the victim choking him. Appellant also testified that Rodriguez was involved in the fight. Finally, appellant testified that he lied to the police about killing the victim in order to protect Rodriguez.

Dr. Marc Andrew Krouse, a medical examiner, testified that the victim was stabbed or cut at least thirty-five times and that several of the wounds would have caused death almost immediately, including two wounds to the neck. He testified that the neck wounds could have been caused by a pocketknife but that the chest wounds were caused by something else.

Both the State and the defense called DNA experts to testify. Constance Patton, the State's expert, testified that the blood on the murder weapon and on appellant's clothing belonged to the victim. Appellant's DNA expert, Dr. Rick Staub, con-curred with the results of the State's DNA testing. Dr. Staub also testified that there was both male and female DNA on the white shirt found in appellant's motel room and that it was possible that a female could have worn the shirt on the night of the murder. Dr. Staub admitted, however, that there was no way to determine when the shirt was worn by the female. The State's DNA expert testified that the presence of female DNA on the shirt had little evidentiary value because it would not indicate if the female was wearing the shirt on the night of the offense.

Appellant filed a pretrial motion requesting forensic DNA testing on twenty-nine samples collected by the police during the investigation and also a motion to require Rodriguez to produce a DNA sample. The trial court denied both motions. On August 3, 2004, the day after the trial began, appellant filed a *subpoena duces tecum* to collect DNA from Rodriguez. Counsel for Rodriguez filed a motion to quash the subpoena. The trial court granted the motion to quash. The trial resumed, and appellant was convicted of capital murder. This appeal followed.

*Issues on Appeal*

In appellant's first issue, he asserts that the trial court erred by refusing to allow appellant's court-appointed expert to test the twenty-nine DNA samples collected by the Abilene Police Department at the crime scene and related areas. In appellant's second and third issues, he asserts that the trial court erred by denying his motion to require Rodriguez to produce a DNA sample. In appellant's fourth and fifth issues, he asserts that the trial court

---

**2.** The robbery charge arose from the theft of an Xbox and other items from the victim's apartment.

erred by quashing appellant's *subpoena duces tecum* for a sample of Rodriguez's hair.

### The Motion for Forensic DNA Testing

■ Appellant asserts initially that the trial court's refusal to allow his court-appointed expert to test the twenty-nine DNA samples collected by the Abilene Police Department from the crime scene and related areas violated his right to due process under the Fourteenth Amendment to the U.S. Constitution.

Prior to trial, appellant filed a Motion for Forensic DNA Testing of Evidence Collected by the State. The motion involved twenty-nine untested DNA samples collected by the Abilene Police Department during the investigation. One of appellant's theories during trial was that Rodriguez stabbed the victim. Appellant asserts that it was essential for him to prove in some way that Rodriguez was in the room where the victim died.

Motions for forensic DNA testing are authorized by Tex.Code Crim. Proc. Ann. ch. 64 (Vernon Supp.2005) and are usually not made until after a person has been convicted of an offense.[3] Because there is no provision in the Code of Criminal Procedure authorizing such motions prior to conviction, we will treat appellant's motion as a discovery request pursuant to Tex. Code Crim Proc. Ann. art. 39.14 (Vernon Supp.2005).

■ A defendant in a criminal case does not have a general right to discovery of evidence in possession of the State. *Whitchurch v. State*, 650 S.W.2d 422, 425

(Tex.Crim.App.1983). There is a limited right to discovery pursuant to Article 39.14 which provides, in relevant part, that the trial court may "order the State before or during trial ... to produce and permit the inspection ... of any ... objects or tangible things not privileged, which constitute or contain evidence material to any matter involved in the action and which are in the possession, custody or control of the State or any of its agencies." An accused's right to discovery is within the sound discretion of the trial court. *Quinones v. State*, 592 S.W.2d 933, 940 (Tex.Crim.App.1980). A trial court abuses its discretion if it does not permit discovery of evidence that is material to the defense of the accused. *See McBride v. State*, 838 S.W.2d 248, 250 (Tex.Crim.App.1992).

■ In determining materiality, omitted evidence must be evaluated in the context of the entire record. *See Frank v. State*, 558 S.W.2d 12, 14 (Tex.Crim.App.1977). Materiality requires more than the mere possibility that the information might help the defense or affect the outcome of the trial. *See Hampton v. State*, 86 S.W.3d 603, 612 (Tex.Crim.App.2002). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Amos v. State*, 819 S.W.2d 156, 159 (Tex. Crim.App.1991). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Ex parte Kimes*, 872 S.W.2d 700, 702 (Tex.Crim. App.1993).

After reviewing the entire record, we do not believe there is a reasonable probabili-

---

**3.** Chapter 64 refers repeatedly to the movant as "a convicted person" and to the trial court to which the motion is submitted as "a convicting court." *See, e.g.,* Sections 64.01(a), 64.03(a).

ty that, had appellant been able to test the DNA samples, the result of the proceeding would have been different. Initially we note that it is unclear from the record where the untested samples came from. Attached to appellant's motion was a report by Tammy McLean, a forensic specialist, who participated in the crime scene investigation. She reported that the samples were taken from the victim's apartment and two bathrooms in the Century Lodge, but she did not specify where exactly each untested sample came from.

McLean reported that she processed a coke can and a coffee cup from an end table by the couch; an ashtray, a wallet, and a day planner from the coffee table; an empty pack of cigarettes; and a DVD player. However, the report does not indicate if the untested DNA samples came from these items. The untested samples may also have come from the victim's kitchen, bathroom, the inside knob of the front door, and the stairs outside the front door. Nowhere in the report are the untested samples matched with the specific areas in which they were obtained. The report also does not break down how many untested samples were taken from the victim's apartment and how many were taken from the Century Lodge. Without knowing if the samples even came from inside the victim's apartment, it is impossible to conclude that DNA analysis would have confirmed Rodriguez's presence there.

Moreover, even if we assume each of the samples did in fact come from inside the apartment and in close proximity to the victim, the record does not support a finding of materiality because the evidence of appellant's guilt was overwhelming. The

victim's blood was found on appellant's shirt and pants. The victim's blood was also found on the handle wrapping of a sword that appellant had borrowed on the night of the murder. One witness testified that appellant told her he was going to kill the victim, and another witness testified that appellant said he was going to hurt the victim. Appellant confessed to stabbing the victim to the police, to his mother, and to a television reporter. There is also evidence in the record that he confessed the crime to his ex-girlfriend.

DNA testing would not have contradicted this evidence. At most, DNA testing might have proven that someone else was in the victim's apartment at some point in time. DNA testing would not prove when the third person was in the apartment nor what he or she was doing while there.

Appellant contended during oral argument, however, that confirmation of Rodriguez's presence in the room would bolster his credibility. That alone does not make testing the DNA evidence material to appellant's case.[4] Materiality requires that the testing directly impact the outcome as opposed to potentially providing helpful information. *See United States v. Agurs*, 427 U.S. 97, 109–10, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense"). Appellant's first issue is overruled.

### *The Motion to Require Rodriguez to Produce a DNA Sample*

■ In appellant's second and third issues, he asserts that the trial court's denial

---

4. This conclusion is supported by the fact that the State did not dispute that Rodriguez could have been present at the time of the murder.

In fact, during its opening argument, the State conceded she was probably present.

of his motion to require Rodriguez to produce a DNA sample to compare with the female DNA found on the white shirt with the victim's blood violated his right to compulsory process under the Sixth Amendment of the U.S. Constitution and Article I, section 10 of the Texas Constitution.

The Sixth Amendment of the United States Constitution provides in relevant part that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor." Similarly, Article I, section 10 of the Texas Constitution provides that a defendant "shall have compulsory process for obtaining witnesses in his favor."

██-█ The right to compulsory process is "the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Coleman v. State*, 966 S.W.2d 525, 527 (Tex.Crim.App.1998). It does not guarantee, however, the right to secure evidence from any and all witnesses; rather, compulsory process is guaranteed only for obtaining evidence that would be both material and favorable to the defense. *See id.* at 527–28. The burden of proving materiality and favorableness is on the defendant. *See id.* at 528.

Appellant has not met his burden of proof. If Rodriguez's DNA was on the white shirt, this could possibly be favorable to appellant's case; but we cannot conclude that it would be material. The female DNA was not found on the murder weapon nor was it found on the victim. It was found on a shirt seized by the police from a motel room appellant and Rodriguez were sharing. This shirt could have been worn at any point in time prior to the night of the murder because appellant and Rodriguez had an intimate relationship. It is certainly conceivable that Rodriguez could have worn appellant's shirt on more than one occasion. Therefore, even if testing revealed that the female DNA on the shirt belonged to Rodriguez, it would not prove anything material to appellant's case. The mere possibility that she wore the shirt at some point in time does not necessarily implicate Rodriguez nor does it exculpate appellant. Appellant's second and third issues are overruled.

### The Subpoena Duces Tecum

██ In appellant's fourth and fifth issues, he asserts that, by quashing his *subpoena duces tecum*, the trial court violated TEX.CODE CRIM. PROC. ANN. art. 24.02 (Vernon 1989) and the Sixth and Fourteenth Amendments of the U.S. Constitution. Appellant's arguments concerning the Sixth and Fourteenth Amendments involve his constitutional rights to due process and compulsory process. As we have already explained, we do not believe appellant's rights to due process and compulsory process were violated because the DNA evidence was not material to appellant's case.

██ We also do not believe Article 24.02 was violated. This statute provides that, "[i]f a witness have in his possession any instrument of writing or other thing desired as evidence, the subpoena may specify such evidence and direct that the witness bring the same with him and produce it in court." A *subpoena duces tecum* is not to be used as a discovery weapon but as an aid to discovery based upon a showing of materiality and relevance. *Ealoms v. State*, 983 S.W.2d 853, 859 (Tex.App.-Waco 1998, pet. ref'd). If a showing of materiality is not made, it is proper for the trial court to quash the

subpoena. *See Martin v. Darnell,* 960 S.W.2d 838, 840–41 (Tex.App.-Amarillo 1997, no pet.).

As we have already explained, Rodriguez's DNA was not material to appellant's case because there is not a reasonable probability that Rodriguez's DNA would have changed the outcome of the trial. For that reason, we hold that the trial court did not err in quashing the *subpoena duces tecum.* We overrule appellant's fourth and fifth issues.

*Conclusion*

Because the untested DNA samples and Rodriguez's DNA were not material to appellant's case, the trial court did not abuse its discretion in denying appellant's motions and in quashing appellant's *subpoena duces tecum.*

The judgment of the trial court is affirmed.