# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-12-00278-CR
NO. 03-12-00279-CR
NO. 03-12-00280-CR

**Mark David Simmons, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
NOS. CR-10-0799, CR-10-0802, & CR-10-0832
HONORABLE WILLIAM HENRY, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Mark David Simmons was charged with the murder of Steven Woelfel, *see* Tex. Penal Code § 19.02, the crime of evidence tampering for attempting to destroy or conceal Woelfel's body, *see id.* § 37.09, and the arson of Woelfel's home, *see id.* § 28.02.

Prior to trial, Simmons elected to represent himself, but the district court appointed stand-by counsel to assist Simmons. *See Walker v. State*, 962 S.W.2d 124, 126 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (explaining that stand-by counsel occurs when defendant requests to represent himself and when trial court allows his attorney to remain on case and to advise defendant). During a pretrial hearing, Simmons's stand-by counsel requested that the district court conduct a hearing regarding out-of-state subpoenas for witnesses that Simmons wanted to have testify during

the trial. At another pretrial hearing held two months later, Simmons requested that subpoenas be issued for five out-of-state witnesses. After considering Simmons's subpoena requests, the district court initially granted the five requests.[1] In another pretrial hearing held approximately two weeks later, Simmons expressed that he was not ready for trial, in part, because "accommodations have to be made for flights" for his out-of-state witnesses. Moreover, Simmons stated that his motion for continuance had been "sent . . . in the mail" on the morning of the hearing.[2] A few days after that hearing, the trial began.

During the trial but outside the presence of the jury, Simmons asked the district court to issue orders providing his out-of-state witnesses with "some transportation and a motel room." In another hearing convened a few days later outside the presence of the jury, the district court informed Simmons that it was "going to reconsider its ruling related to the subpoena of out-of-state witnesses." On the following day, the district court explained that it had reconsidered its prior ruling and was denying Simmons's request for the out-of-state subpoenas. When explaining its ruling, the court stated, "[a]mong other things, the Court finds that these witnesses are not material to any defenses that you have." Accordingly, the district court denied Simmons's request under article 24.28 of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 24.28 (setting out procedure for securing attendance for out-of-state witnesses).

---

[1] Simmons requested that other individuals be subpoenaed as well, including various government officials, but the district court denied those requests. Simmons does not challenge those rulings on appeal.

[2] As will be discussed more thoroughly later in the opinion, Simmons filed several motions for continuance both before and after the trial began.

Over a week after the district court's ruling, Simmons filed a motion for continuance. In his motion, Simmons requested a continuance because the district court denied his request for the out-of-state subpoenas. After reviewing the motion, the district court denied the motion.

When the jury charge was prepared, the charge included instructions for an insanity defense as well as for self-defense. At the conclusion of the trial, the jury found Simmons guilty of all three crimes and sentenced Simmons to life in prison for the murder conviction, to ten years' imprisonment for the evidence-tampering conviction, and to twenty years' imprisonment for the arson conviction. The district court ordered that the sentences run concurrently.

After the district court issued its judgment, Simmons filed this appeal.[3]

**DISCUSSION**

On appeal, Simmons raises three related issues. First, he contends that the district court erred when it reversed its previous decision granting Simmons's request for the five out-of-state subpoenas. In his second issue, Simmons urges that the district court erred when it overruled his motion for continuance. Finally, Simmons contends that these two rulings by the district court violated his right to procedural due process.

*Subpoenas*

As mentioned above, in his first issue on appeal, Simmons argues that the district court erred by denying his request for out-of-state subpoenas. In fact, Simmons contends that the

---

[3] Subsequent to the State filing its brief in this case, Simmons filed a pro se brief. In this opinion, we do not address the points made in Simmons's pro se brief because he has no right to hybrid representation. *See Marshall v. State*, 210 S.W.3d 618, 620 n.1 (Tex. Crim. App. 2006).

district court's denial violates the Sixth Amendment, which provides, in relevant part, that an "accused shall enjoy the right to . . . have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI; *see Washington v. Texas*, 388 U.S. 14, 18-19 (1967) (expanding right to compulsory process to state court proceedings); *see also* Tex. Const. art. I, § 10 (providing compulsory process rights); Tex. R. App. P. 44.2(a) (stating that if record reveals constitutional error in criminal case, appellate court must reverse unless "court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment").

Although Simmons correctly points out that the right to compulsory process is constitutional in nature, that right is not without limits and instead "guarantees only compulsory process for obtaining witnesses whose testimony would be both material and favorable to the defense." *See Coleman v. State*, 966 S.W.2d 525, 527-28 (Tex. Crim. App. 1998). In other words, "the defendant must make a plausible showing to the trial court, by sworn evidence or agreed facts, that the witness' testimony would be both material and favorable to the defense." *Id.* at 528. If a defendant "has not had an opportunity to interview a witness," he "may make the necessary showing by establishing the matters to which the witness might testify and the relevance and importance of those matters to the success of the defense." *Id.*; *see also id.* (explaining that if defendants did not have burden of showing materiality and favorableness, there is potential for frivolous requests that would make trial endless and unduly burdensome). However, a "mere belief that a witness would support the defense's case is insufficient to establish materiality." *Emenhiser v. State*, 196 S.W.3d 915, 921 (Tex. App.—Fort Worth 2006, pet. ref'd); *see Weaver v. State*, 657 S.W.2d 148, 151 (Tex. Crim. App. 1983) (explaining that bare assertions that witness's testimony will be material

4

are insufficient to satisfy this burden and that detailed factual bases are "necessary in the interests of comity, economy, and efficiency").

In addition to these general requirements, the Code of Criminal Procedure sets out the process for obtaining out-of-state subpoenas. For out-of-state witnesses, the Code reiterates that trial courts overseeing a prosecution may issue subpoenas for "material" witnesses. Tex. Code Crim. Proc. art. 24.28, § 4(a). After receiving an application, the trial court determines, among other things, whether the "witnesses are material and necessary." *Ashby v. State*, 646 S.W.2d 641, 644 (Tex. App.—Fort Worth 1983, pet. ref'd); *see also Reader's Digest Ass'n, Inc. v. Dauphinot*, 794 S.W.2d 608, 610 (Tex. App.—Fort Worth 1990, orig. proceeding) (addressing propriety of order denying request to quash subpoena in criminal case). The applicant has the burden of proving that the out-of-state witness is material and necessary, and the trial court's ruling is reviewed for an abuse of discretion. *Ashby*, 646 S.W.2d at 644; *see Emenhiser*, 196 S.W.3d at 921. A trial court abuses its discretion if it acts without reference to any guiding principles or rules. *State v. Herndon*, 215 S.W.3d 901, 907-08 (Tex. Crim. App. 2007).

As discussed above, Simmons related to the district court that he wanted subpoenas for five out-of-state witnesses. After expressing his desire to have those witnesses testify, Simmons expressed his claim that Woelfel's death was ultimately caused by pressure that various governmental employees had been exerting on Simmons. Specifically, Simmons stated as follows: "My whole defense is going to be involved in five or six years of nonstop harassment to which I reported hundreds of times to officials in all capacities of government." Simmons also related that his defense was "insanity at the time, [Woelfel]'s mental duress at the time."

5

After generally discussing the purpose of calling the witnesses, Simmons mentioned five individual witnesses. First, Simmons stated that he wanted Adriana Campos to testify. According to Simmons, Campos was a citizen of Mexico and was Woelfel's long-term girlfriend. Further, Simmons stated that Woelfel was being harassed by the FBI and the Department of Homeland Security and that Campos gave an interview in which she detailed that both she and Woelfel were being harassed due to Woelfel's political beliefs.

Second, Simmons requested a subpoena for Sharon Patterson. According to Simmons, Patterson was the manager of a storage facility that he used and was his best friend. When discussing why he wanted to call Patterson, Simmons stated that Patterson had been interviewed by a law enforcement officer and was "literally in fear of these people." Further, he stated that "every single time that I went to my storage shed I had two or three Civil Air Patrolmen circling my storage shed."

Third, Simmons asked for a subpoena for Richard Palmer. According to Simmons, Palmer observed some of the harassment that Simmons had suffered. In particular, Palmer allegedly observed planes flying over the places where Simmons worked and received phone calls regarding Simmons from individuals falsely claiming to be working with the police.

Fourth, Simmons requested a subpoena for Richard Brogan. Simmons related that Brogan was the brother of his ex-wife and worked for the Tennessee Bureau of Investigations. Simmons alleged that Brogan would be able to provide testimony regarding the governmental harassment that Simmons had been receiving.[4]

---

[4] Simmons conceded that he had not personally interacted with Brogan for a long period of time, but he said that he had written him "quite a bit of hate mail since I've been in jail."

6

Finally, Simmons asked the district court to issue a subpoena for Mark Gwyn. According to Simmons, Gwyn worked for Brogan. Simmons indicated that Gwyn had interviewed Patterson and that during that interview, Patterson revealed to Gwyn that she had observed airplanes flying over the storage facility when Simmons went to his storage unit.

As mentioned above, the district court initially granted Simmons's request for the five subpoenas, but in subsequent hearings, the district court indicated that it intended to deny the request. Specifically, after Simmons responded, "Yes," to a question by the district court regarding whether the testimony of the witnesses would bear upon "the issue of duress or coercion," the district court then asked Simmons when he last had any interaction with the witnesses. Simmons replied that "it's going to be within a year, year and a half of this incident." Further, Simmons conceded that he had never actually talked to Campos but believed that she would testify regarding the harassment that Woelfel was being subjected to. *See Weaver*, 657 S.W.2d at 151 (determining that defendant had failed to meet burden of showing that witnesses were material and noting that defendant "had not spoken to any of the witnesses about testifying at his trial"). As support for this assertion, Simmons mentioned a prior interview with law-enforcement personnel in which Campos purportedly described the harassment.

After Simmons described Woelfel's fears regarding the government, the district court asked how Woelfel's fear related to Simmons's defense, and Simmons replied, "Entrapment, as I understand it, means that a situation has been intentionally provoked by law enforcement to a point to where a normal person would not have been able to withstand the situation." Simmons further explained that he had phone records to show that he had made "hundreds of calls . . . to every single

7

senator and every single congressman" as well as the governor to report "this aerial harassment." On the day following this exchange, the district court informed Simmons that it was reversing its prior decision and was now denying Simmons's request for the five out-of-state subpoenas because Simmons had not shown that the testimony was material to any defense that he had.

When requesting the subpoenas, Simmons made no showing, "by sworn evidence or agreed facts," that the testimony from the witnesses would be material or favorable to his defense, nor did he establish the subject matter "to which" the five witnesses "might testify and the relevance and importance of those matters to the success of the defense." *Coleman*, 966 S.W.2d at 528. Although Simmons generally stated his belief that the witnesses might testify regarding governmental pressure and harassment that had been repeatedly applied to both himself and Woelfel and mentioned that several of the witnesses had observed the harassment, Simmons did not establish how that harassment would have been relevant or material to any of his defensive theories. *See id.* (concluding that defendant did not make requisite showing because although he argued that witness could enlighten jury about his state of mind when he shot victim, "he made no plausible showing to the court that the [witnesses]' testimony would be *material* and *favorable* to either of his defensive theories"). Morever, Simmons's unsupported assertions that the testimony would be relevant to his defensive theories are not sufficient to meet his burden. *See Weaver*, 657 S.W.2d at 151; *Emenhiser*, 196 S.W.3d at 921.

On the record before this Court, we cannot conclude that the district court abused its discretion by determining that Simmons had not met his burden of showing that the testimony

of the requested witnesses was material.[5]   Accordingly, we also cannot conclude that the district

court's decision to reverse its prior ruling deprived Simmons of his right to compulsory process.[6]

For all of these reasons, we overrule Simmons's first issue on appeal.  *See Talton v.*

*State*, No. 06-03-00108-CR, 2004 Tex. App. LEXIS 2503, at *4 (Tex. App.—Texarkana Mar. 19,

2004, no pet.) (mem. op., not designated for publication) (determining that trial court did not abuse

---

[5] We note that although Simmons acknowledges in his brief that he was obligated to show "that the witness' testimony would be both material and favorable to" his defense, his brief does not explain how the testimony of any of the five witnesses would have been material or favorable.

[6] In his brief, Simmons points to various delays as support for his assertion that the district court acted improperly by denying his request for the out-of-state subpoenas.  First, Simmons notes that a hearing was held two months before trial regarding his competency, which resulted in no further hearings until approximately two weeks before trial.  Further, Simmons notes that it was during this subsequent hearing that the district court initially granted his request for the out-of-state subpoenas.  In addition, Simmons highlights that the next hearing was not convened until a few days before trial and that it was during this hearing that financial considerations and travel arrangements for the witnesses were first discussed.  Accordingly, Simmons contends that he was not provided with enough time to procure the witnesses or to arrange for their travel.

As a preliminary matter, we note that the first pretrial hearing in this case was convened a year and a half before the trial actually began, and Simmons does not assert on appeal that he mentioned his desire to obtain these specific out-of-state subpoenas until the hearing regarding his competency, which was held two months before trial.  We also note that after the district court preliminarily granted Simmons's subpoena requests, the district court admonished Simmons that it was his responsibility to "deal with the courts from the other jurisdictions to get the witnesses here." In addition, Simmons's stand-by counsel stated in a pretrial hearing that Simmons had discussed the subpoenas with him 18 days before trial and that "18 days is adequate time to serve subpoenas all over the country," but Simmons expressly refused to allow his stand-by counsel to provide any help regarding the out-of-state witnesses. *See Emenhiser v. State*, 196 S.W.3d 915, 921 (Tex. App.—Fort Worth 2006, pet. ref'd) (explaining that "the right to compulsory process is dependent upon an accused's initiative, and the nature of the right requires that its effective use be preceded by" affirmative conduct and deliberate planning by defendant).  In any event, as discussed above, we conclude that the district court's ultimate decision that Simmons failed to meet his burden of establishing materiality was not an abuse of discretion.  Accordingly, we do not believe that any delay identified by Simmons resulted in the denial of his right to compulsory process.

its discretion by quashing subpoena where there was "no evidence about the nature of the testimony that counsel sought to compel" and where there was "nothing in this record to show either that counsel had interviewed the witness or attempted to do so"); *Guzman v. State*, No. 04-02-00198-CR, 2003 Tex. App. LEXIS 8795, at *7 (Tex. App.—San Antonio Oct. 15, 2003, pet. ref'd) (not designated for publication) (concluding that defendant failed to meet burden where "nothing more than speculation" was given regarding whether witnesses would have been able to offer favorable and material testimony); *cf. Price v. State*, No. 10-11-00070-CR, 2012 Tex. App. LEXIS 8776, at *9 (Tex. App.—Waco Oct. 18, 2012, no pet.) (mem. op., not designated for publication) (deciding, in context of effectiveness of counsel, that counsel's performance was not deficient for failing to request continuance after pro se motion for subpoena had not been acted on when record did not show "that the witnesses' testimony would actually be material and favorable to the defense").

*Continuance*

In his second issue, Simmons contends that the district court erred by denying his request for a continuance.

Appellate courts review a "trial court's ruling on a motion for continuance" under an abuse-of-discretion standard. *Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002); *see Herndon*, 215 S.W.3d at 907-08 (setting out when court abuses its discretion). In order for a defendant to establish that a trial court abused its discretion by denying his motion for continuance, he "must show that he was actually prejudiced by the denial of his motion." *Vasquez*, 67 S.W.3d at 240. When determining if the trial court abused its discretion, appellate courts should bear

10

in mind the overall interest in the efficient and prompt operation of justice. *Rosales v. State*, 841 S.W.2d 368, 374 (Tex. Crim. App. 1992). In addition, reviewing courts should also consider, among other factors, the reasons given at the time that the request for a continuance was made, the length of the requested continuance, the number of other continuances that have been requested and granted or denied, the amount of time that the defense has had to prepare for trial, and the legitimacy of the reasons given for the requested continuance. *Id.*

In his motion for continuance, Simmons complained of the delay in obtaining subpoenas for various witnesses and then urged that the testimony from three of the five out-of-state witnesses was "critical to [his] being able to vindicate himself."[7] Regarding the three individuals, Simmons stated that Campos had first-hand knowledge of Woelfel's paranoid state of mind and his violent tendencies, that Patterson was a witness to the harassment that "induced the state of mind at the time of the offense," and that Gwynn viewed a video showing harassment that Simmons had endured over the years. Regarding the video, Simmons alleged that the video was "now missing from evidence." After discussing these individuals, Simmons requested that the district court grant a continuance until those individuals were subpoenaed.

As discussed in the previous issue, when originally seeking his subpoenas, Simmons made no showing that the testimony of the five witnesses, with whom he had not interacted for at least a year before the incident, would be material or favorable to his defense, nor did he establish

---

[7] In the motion for continuance, Simmons mentioned the district court's decision to not issue subpoenas for other witnesses as well, including expert witnesses. However, the district court's rulings regarding these other witnesses are not challenged in his appellate briefing.

the subject matter that the witnesses might have testified about or how the testimony would be relevant and important to his defense. For that reason, we concluded that the district court did not abuse its discretion by denying Simmons's request for out-of-state subpoenas. As evidenced by the relief that he actually requested in his motion for continuance, Simmons essentially asked the district court to reconsider its decision denying his request for subpoenas for three of the five out-of-state witnesses, but he again did not show how testimony from those individuals would be material or favorable to his defense.

Moreover, other than expressing his desire to compel the testimony from witnesses that the district court previously determined were not material to his defense, Simmons identified no other reason that a continuance would be necessary. For example, he did not allege that he needed additional time to more thoroughly investigate his defenses or to seek out other defensive witnesses. In addition, Simmons did not specify the length of the continuance that he was seeking or otherwise indicate how much additional time was needed to fully prepare his defense in light of the fact that the district court had denied his subpoena requests. Furthermore, prior to requesting this continuance, Simmons had filed eighteen other motions for continuance, and the record reflects that the district court granted at least one of those prior motions. Moreover, the start of the trial had been delayed by several months. In addition, although the trial had already commenced when the district court ultimately denied Simmons's subpoena requests, Simmons did not file the motion for continuance at issue in this appeal until well over a week after the district court made its ruling regarding his subpoena requests.

In his appellate brief, Simmons alleges that the district court erred because the three witnesses would have "addressed the mental stress that he and [Woelfel] were undergoing" and, therefore, would have been "material and highly substantive regarding both his self-defense jury charge and the 'insanity at the time of the offense' defense." Further, Simmons contends that the district court's unexpected decision severely undermined his ability to present a defense. *See* Tex. Code Crim. Proc. art. 29.13 (allowing for continuance when it is shown that "by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had").

However, other than the general statements listed above, Simmons again failed to show in his brief how the testimony would have been material and favorable to his defense. Although Simmons correctly points out that the district court's denial of his subpoena requests prohibited him from calling the desired witnesses, he does not identify how the failure to grant the subsequent request for a continuance prejudiced him. In other words, Simmons does not mention on appeal any potential benefit to him that would have resulted from a delay of the proceedings. Moreover, the record reveals that Simmons was able to introduce evidence pertaining to his defense regarding governmental harassment. *See Jones v. State*, No. 13-98-00284-CR, 2000 Tex. App. LEXIS 5414, at *9 (Tex. App.—Corpus Christi Aug. 10, 2000, no pet.) (not designated for publication) (explaining that defendant did not show that he was prejudiced by failure to grant his continuance when testimony from witness "would have only been cumulative of the disinterested

13

testimony" of two other witnesses)[8]; *cf. Vasquez*, 67 S.W.3d at 241 (determining that defendant was not prejudiced by failure to grant motion for continuance and noting that defendant was able to "procure witnesses to counter" allegedly problematic testimony). For example, he extensively questioned witnesses regarding allegedly improper acts committed by various government agencies and regarding the effect that government harassment might have on an individual's mental state, played a video of an interview by Campos, questioned a private investigator regarding his claims of harassment who agreed that some of Simmons's complaints had merit, and admitted into evidence video recordings he made of planes flying over his house.

For all these reasons, we cannot conclude that the district court abused its discretion by overruling Simmons's motion for continuance. Accordingly, we overrule Simmons's second issue on appeal.

---

[8] In his brief, Simmons notes that the Court of Criminal Appeals has previously stated that "an accused's first application for continuance because of the absence of a witness is generally not subject to attack on the ground that the testimony sought would be merely cumulative." *Foster v. State*, 497 S.W.2d 291, 293 (Tex. Crim. App. 1973). In light of that statement, Simmons contends that the fact that he was able to introduce other evidence pertaining to his defense is irrelevant. We believe that Simmons's reliance on *Foster* is misplaced.

In *Foster*, the defendant moved for a continuance on the first day of trial due to "the absence of a material witness," but the trial court overruled his request. *Id.* at 292. On review, the Court of Criminal Appeals determined that the motion for continuance should have been granted. *Id.* However, unlike the present case, Foster provided an explanation regarding why the witness was material. In particular, Foster alleged "that the testimony of the witness would be material in regard to the issue of the voluntary nature of an oral statement which he made to police officers at the time of his arrest. According to the allegations of the motion, the witness observed a beating which appellant had received from police officers at the time of arrest." *Id.* Moreover, unlike the present case, Foster alleged that he only learned about the existence of the material witness two days before the start of trial and that he requested the continuance as soon as practicable. *Id.* In addition, unlike in the present case, Foster had not previously requested any continuances. *Id.* at 293.

14

*Due Process*

In his third issue on appeal, Simmons asserts that the district court's abuses of discretion identified in his first two issues constituted violations of his right to procedural due process. As discussed above, we have concluded that the district court did not abuse its discretion by denying Simmons's request for out-of-state subpoenas or by overruling his motion for continuance. Accordingly, we do not believe that Simmons has identified violations of his procedural due process that would warrant relief. For that reason, we overrule Simmons's third issue on appeal.

## CONCLUSION

Having overruled all three of Simmons's issues on appeal, we affirm the district court's judgments of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed

Filed:   June 3, 2014

Do Not Publish

15