

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-18-00005-CR
_____

ASHLEE ANNE DEAN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 106th District Court
Garza County, Texas
Trial Court No. 14-2699; Honorable Carter T. Schildknecht, Presiding[1]

June 28, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Following a plea of not guilty, Appellant, Ashlee Anne Dean, was convicted by a jury of capital murder.[2] Appellant was charged with intentionally and knowingly causing

---

[1] The Honorable Cecil Puryear, Senior Judge of the 137th District Court, was assigned to the case after Judge Schildknecht voluntarily recused herself at the motion for new trial phase.

[2] TEX. PENAL CODE ANN. § 19.03(a)(8) (West 2019) (murder of an individual under ten years of age).

the death of her daughter, Alexandria Lee Courtney, an individual younger than ten years of age, by shooting her with a deadly weapon, to-wit: a firearm. Punishment was assessed by the trial court at confinement for life without the possibility of parole. By a sole issue, Appellant contends the assigned presiding judge (appointed after the voluntary recusal of the judge presiding at trial) erred when he quashed a subpoena duces tecum that had been issued for the trial judge to testify at a hearing on Appellant's motion for new trial. We affirm.

### BACKGROUND

Appellant was living with her boyfriend, Jason Courtney, in his house with his children from another relationship. She became pregnant and gave birth to Alexandria in 2012. Jason's other children became involved with Child Protective Services, causing Alexandria and Appellant to also become involved. Alexandria was temporarily placed with Appellant's brother and his wife.

Appellant, who occasionally used methamphetamine, cooperated with CPS and worked her services. Jason, who had a serious issue with methamphetamine, was unwilling to complete his services. On the caseworker's recommendation, Appellant and Jason ceased living together to improve Appellant's chances of being reunited with Alexandria. Jason agreed to move out of his own house so Appellant could claim it as a permanent residence to satisfy CPS's concerns about stable housing.

Appellant was able to obtain the return of Alexandria from CPS and her case was closed. She and Jason, however, continued their relationship and he visited the home and his daughter often. Although Jason did not live there, he kept some of his belongings

2

there, including a rifle he claimed he was keeping for a friend. Although Appellant did not approve of Jason's leaving the rifle with her, she was aware of the fact that he kept the rifle and ammunition in the home.[3]

During one of Jason's visits, she relapsed and used methamphetamine with him. The next day, on February 20, 2014, Jason came by the house for a visit. While getting a shirt from the bedroom closet, he handled the hunting rifle, intending to go shooting after work. He also asked Appellant where she kept the ammunition. He then left for work but did not take the rifle or the ammunition with him.

That day, Appellant had a goal of de-cluttering and cleaning the house. After Jason left, she continued with her project by cleaning the bedroom closet where the rifle was kept. During this time, her daughter was with her. Appellant testified that while she was going through some clothes, she heard "the boom of the weapon" and saw that her daughter had been shot in the head. After witnessing her daughter's bloody head injury, she reloaded the gun and tried to shoot herself, but failed. She subsequently called 911 to report the incident. Alexandria's head injury was fatal. She was twenty-two months old.

First responders arrived and tended to Appellant's daughter. Appellant testified that she recalled someone from law enforcement walking her out of the house and transporting her to jail. She was charged with capital murder; however, the State waived the death penalty.

---

[3] Appellant testified she was familiar with weapons but was not comfortable with them in the house.

A jury trial was held in October 2017. Following Appellant's conviction, Judge Schildknecht imposed the statutorily required sentence—life without the possibility of parole. A judgment was signed on October 20, 2017.

Appellant timely filed a motion for new trial asserting, among other grounds, that Judge Schildknecht "exhibited improper bias" and "improperly commented on the evidence presented to the jury" by gestures which deprived Appellant of a fair trial. Specific complaints included "odd facial gestures," "eye-rolling," "winking at or laughing with the prosecutor," "loud exasperated sighs" during questioning by defense counsel, and the judge signaling with her hands in frustration for defense counsel to hurry along when questioning witnesses—particularly the State's firearm expert.

Appellant also alleged violations of article 38.05 of the Texas Code of Criminal Procedure which provides that a trial judge "shall not discuss or comment upon the weight of" the evidence in ruling on its admissibility. The motion for new trial was supported by numerous affidavits from Appellant's family members, the gist of which recited that Judge Schildknecht acted unprofessionally and showed bias against Appellant.

On November 28th, Judge Schildknecht signed an order voluntarily recusing herself from further proceedings in the case. Judge Puryear was assigned to the case on December 5th. Appellant's trial counsel moved to withdraw from the case in anticipation of being a potential witness at the hearing on the motion for new trial. On December 21st, counsel's motion to withdraw was granted and new counsel was appointed to represent Appellant for the remainder of the proceedings, including an appeal.

Due to the holidays, the courthouse was closed until Wednesday, December 27th. The next day, Appellant issued subpoenas for the twelve jurors, the two prosecutors, and Judge Schildknecht. Judge Schildknecht was served with her subpoena duces tecum on December 29, 2017. The subpoena commanded her to produce copies of (1) documents relating to "any judicial education" the judge had completed within the immediate four years relating to the open courts doctrine and/or recognizing bias or prejudice and certain canons of the Texas Code of Judicial Conduct, (2) any correspondence, written, or by text or electronic messages made to District Attorney Philip Mack Furlow or any other agent or employee of the 106th Judicial District Attorney's Office during the past ninety days related to Appellant's case, (3) any correspondence, written, or by text or electronic messages made to defense counsel during the past ninety days related to Appellant's case, and (4) documents related to compliance with orders of the Texas Commission on Judicial Conduct in CJC Nos. 14-1080, 15-0002-DI, and 17-423-DI.[4]

Judge Schildknecht filed objections to the subpoena duces tecum and a motion to quash on the grounds that she received inadequate notice (two business days) of the subpoena the Friday morning before New Year's Day weekend and that any testimony she could offer would be neither material nor favorable to Appellant. On January 2, 2018, the day before the scheduled hearing on Appellant's motion for new trial, the trial court granted Judge Schildknecht's motion to quash without allowing Appellant an opportunity to present evidence.

---

[4] The documents requested were prior reprimands against Judge Schildknecht in 2015 and 2017 which Appellant claimed were the same types of matters about which she was complaining in her motion for new trial.

5

The next day, at the hearing on the motion for new trial, the trial court first entertained arguments and objections on motions to quash filed by the district attorney and an assistant district attorney.[5] Appellant's counsel argued the trial court should not have quashed Judge Schildknecht's subpoena a day earlier without an opportunity to be heard. He sought to question the judge on why she had voluntarily recused herself and also question her on past judicial misconduct complaints.

At the hearing, the trial court heard testimony from five jurors, Appellant's trial counsel, and some of Appellant's family members. Although one juror observed Judge Schildknecht make hand gestures during Appellant's trial, encouraging Appellant's counsel to move along more quickly, each of the five confirmed that nothing the judge did or said influenced their verdict. At the conclusion of the hearing, the trial court found that Judge Schildknecht's conduct did not prejudice the jury against Appellant and denied the motion for new trial.

By a sole issue, Appellant contends the assigned presiding judge erred when he quashed the subpoena duces tecum that had been issued for Judge Schildknecht to testify at the hearing on the motion for new trial. That ruling, Appellant argues, constituted a denial of her constitutional rights to confront a witness, as well as her right under article 38.05 of the Texas Code of Criminal Procedure to be free from a trial court's comments on the weight of the evidence. We disagree.

---

[5] The subpoenas served on the district attorney and a member of his staff were quashed before hearing testimony on the motion for new trial, but those rulings are not at issue here.

Due process requires the right to a trial before a neutral and detached tribunal and every defendant is entitled to a fair and impartial judge. *Fraser v. State*, 523 S.W.3d 320, 338 (Tex. App.—Amarillo 2017, State's pet. granted Nov. 1, 2017) (citing *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S. Ct. 246, 113 L. Ed. 2d 302 (1991)). The denial of an impartial judge is a structural defect which defies harmless error standards. *Fulminante*, 499 U.S. at 309.

The Sixth Amendment of the United States Constitution ensures that a defendant in a criminal prosecution shall have the right to compulsory process for obtaining witnesses in his favor. U.S. CONST. VI; TEX. CONST. art. I, § 10. That right, however, is not absolute. The Sixth Amendment does not guarantee the right to secure the attendance and testimony of any and all witnesses; rather, it guarantees only compulsory process for obtaining witnesses whose testimony would be both material and favorable to the defense. *Coleman v. State*, 966 S.W.2d 525, 527-28 (Tex. Crim. App. 1998). To exercise the federal constitutional compulsory right, the defendant must make a preliminary showing to the trial court, by sworn evidence or agreed facts, that the witness's testimony would be both material and favorable. *Id.* at 528.

In addition, article 38.05 of the Texas Code of Criminal Procedure prohibits a trial judge from commenting on the weight of the evidence in criminal proceedings. *See* TEX. CODE CRIM. PROC. ANN. art. 38.05 (West 1979). *See also Proenza v. State*, 541 S.W.3d 786, 791 (Tex. Crim. App. 2017).[6] As such, a trial judge must also refrain from making

---

[6] A complaint that a trial judge violated article 38.05 creates a waivable only right and may be raised for the first time on appeal. *Proenza*, 541 S.W.3d at 801.

any remark or non-verbal gesture calculated to convey to the jury her opinion of a pending case. *Brown v. State*, 122 S.W.3d 794, 798 (Tex. Crim. App. 2003). "[J]urors are prone to seize with alacrity upon any *conduct or language* of the trial judge which they may interpret as shedding light upon [her] view of the weight of the evidence, or the merits of the issues involved." *Id.* (Emphasis added).[7] To constitute reversible error under article 38.05, the comment or conduct must be such that it is reasonably calculated to benefit the State or prejudice the defendant's rights. *Id.*

### STANDARD OF REVIEW

We review a trial court's ruling on a motion to quash a subpoena, including its determination of whether the defendant met the burden of showing the testimony sought was material and favorable, under an abuse of discretion standard. *Drew v. State*, 743 S.W.2d 207, 225 n.11 (Tex. Crim. App. 1987); *Gallardo v. State*, Nos. 07-16-00086-CR & 07-16-00087-CR, 2016 Tex. App. LEXIS 13135, at *3-4 (Tex. App.—Amarillo Dec. 9, 2016, no pet.) (mem. op., not designated for publication).

### TRIAL JUDGE'S NON-VERBAL GESTURES AND CONDUCT

Appellant carries a heavy burden in demonstrating bias by Judge Schildknecht. Absent a clear showing of bias, we presume a trial judge is neutral and detached. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006).

A judge is constitutionally unacceptable when: (1) the judge has a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) the judge has been the

---

[7] The State argues that article 38.05 applies only to comments and that Appellant's motion for new trial complains only of gestures and conduct that do not rise to a violation of the statute.

target of personal abuse or criticism from the party before her; or (3) the judge has the dual role of investigating and adjudicating disputes and complaints. *Bigby v. Dretke*, 402 F.3d 551, 559 (5th Cir. 2005). "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994). To establish bias, a judge's remarks must "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* "*Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even . . . judges, sometimes display." *Id.* at 555-56. (Emphasis in original). "A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.* at 556. Those "ordinary efforts" certainly include the prompting of counsel regarding the timely presentation of evidence and the avoidance of undue delay.

In the underlying case, one juror testified that he witnessed Judge Schildknecht roll her eyes and a throw down a pencil in apparent frustration; however, he further testified that the conduct did not influence his verdict. The remaining four jurors who testified, when asked if Judge Schildknecht's conduct influenced their verdict, all answered negatively. On the other hand, the affidavits provided in support of Appellant's motion for new trial were all from interested family members. Trial counsel testified and recounted odd gestures by Judge Schildknecht such as the rolling of her hands to signal him to hurry while questioning witnesses. The motion for new trial also complained of eye-rolling, exasperated sighs, and winking at the prosecutor.

9

As we did in *Fraser*, this court recognizes that juries tend to give a judge's comments and conduct "special and peculiar weight." *Fraser*, 523 S.W.3d at 339 (citing *Blue v. State*, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000)). In *Fraser,* after addressing numerous inappropriate comments made by the trial judge in an emotionally charged murder case, we concluded that those comments had not "crossed the ethereal line" between inappropriate conduct and reversible conduct. *Fraser*, 523 S.W.3d at 339. Likewise, while we do not condone some of the alleged gestures and comments made by Judge Schildknecht in this case, also an emotionally charged murder trial, we still embrace the opinion that "[j]udges are not autotronic dispensers of justice" and it is often difficult to clearly delineate between appropriate and inappropriate interaction between a judge and jurors. *Id.*

Here, Appellant has not demonstrated that Judge Schildknecht's conduct was constitutionally unacceptable or that the complained-of gestures clearly showed bias. Neither has she made a preliminary showing that Judge Schildknecht would have provided material and favorable testimony had she been compelled to testify at the hearing on the motion for new trial.

### TRIAL JUDGE'S COMMENTS

While cross-examining the forensic scientist, defense counsel inquired into his testing of Appellant's blood for controlled substances. In attempting to establish the retrograde level of methamphetamine in Appellant's blood, several questions regarding the date and time that her blood sample was taken were asked and answered. In his question, counsel noted the sample was taken "February 20th, 2014, at 7:00 p.m." In a convoluted question/statement, Appellant's counsel postulated that Appellant's level at

10

9:00 a.m. that same day would have been half of what it was when tested, to which Judge

Schildknecht interrupted, "Nope." The interruption then continued as follows:

> The Court: I hate to interrupt, but I may have written down the - - at 9:00, what day are you talking about and are you talking about a.m. or p.m.?
>
> [Defense counsel]: It would be 9:00 a.m. on February 20, 2014.
>
> The Court: Then you're going the wrong way.

After a bench conference, defense counsel objected to the judge's commenting on the

weight of the evidence. She began to explain that she was attempting to clarify the

testimony when defense counsel again reminded her, "[y]ou cannot comment." After

another bench conference, the judge instructed the jury, "I am not to comment on the

evidence, so please disregard what I just said." Just as defense counsel began again,

the judge interrupted, "I was right."[8]

While inappropriate, these comments do not constitute reversible error. "It is not

improper for a trial judge to interject in order to correct a misstatement or

misrepresentation of previously admitted testimony." *Jasper v. State*, 61 S.W.3d 413,

421 (Tex. Crim. App. 2001). Here, it is apparent Judge Schildknecht believed she was

merely pointing out that counsel was going backward in time instead of forward with his

line of questioning. As such, her comments were not intentionally calculated to benefit

the State or prejudice Appellant's rights. Judge Schildknecht's comments were aimed at

---

[8] While the statement may have been petty and inappropriate, Judge Schildknecht was correct. Based on retrograde metabolism of a controlled substance, once a user ceases to ingest a controlled substance and the body has absorbed the substance ingested, the body begins the metabolism process, thereby *decreasing* the level of a given controlled substance in one's system over time. Therefore, assuming no additional ingestion of the substance in question, the level at 7:00 p.m. (the time of testing) would naturally be *less* than the level would have been at an earlier point in time (the time of the offense). Defense counsel's questions clearly demonstrate that he was confused.

clearing up confusion on the timeline of Appellant's blood sample and were not made in conjunction with a ruling on the admissibility of that evidence. Ultimately, Judge Schildknecht's instruction to the jury to disregard her comments was sufficient to cure any error that may have arisen from her statements. *See Marks v. State*, 617 S.W.2d 250, 252 (Tex. Crim. App. 1981). *See also Green v. State*, 476 S.W.3d 440, 449 (Tex. Crim. App. 2015) (finding that trial court's instruction in a jury charge to disregard anything that might appear to indicate the court's opinion on the weight to assign any of the evidence was a curative instruction).

Based on the cold record before us that cannot reflect Judge Schildknecht's tone and demeanor (something Appellant was free to establish through the witnesses who did testify), we conclude Appellant has not demonstrated she was denied a neutral and detached judge. As such, the assigned trial judge did not abuse his discretion in quashing the subpoena duces tecum served on Judge Schildknecht. Appellant's sole issue is overruled.

### CONCLUSION

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.