WR-83,719-01

RECEIVED
COURT OF CRIMINAL APPEALS
8/11/2015
ABEL ACOSTA, CLERK

# Appendix 1

THE STATE OF TEXAS § DOCKET # J12F15-177

§

COUNTY OF MCLENNAN § COURT: JP COURT PRECINCT 1 PLACE 2

## COMPLAINT
### {Articles 15.04 & 15.05, Texas Code of Criminal Procedure}

BEFORE ME, THE UNDERSIGNED AUTHORITY, PERSONALLY APPEARED THE
AFFIANT HEREIN, A PEACE OFFICER UNDER THE LAWS OF TEXAS, WHO, BEING
DULY SWORN, ON OATH MADE THE FOLLOWING STATEMENTS AND
ACCUSATIONS:

My name is MANUEL CHAVEZ and I am commissioned as a peace officer with the City of
Waco by The State of Texas. I hereby state upon my oath that I have reason to believe and do
believe that heretofore, and before the making and filing of this Complaint, that on or about May
17, 2015, in McLennan County, Texas, the said *Clendenmen, Matthew Alan 5-19-85* did then
and there, as a member of a criminal street gang, commit or conspire to commit murder, capital
murder, or aggravated assault, against the laws of the State.

My probable cause for said belief and accusation is as follows:

Three or more members and associates of the Cossacks Motorcycle Club (Cossacks) were in the
parking lot of the Twin Peaks restaurant in Waco, McLennan County Texas. Three or more
members and associates of the Bandidos Motorcycle Club (Bandidos) arrived in the parking lot
of the Twin Peaks restaurant and engaged in an altercation with the members and associates of
the Cossacks. During the course of the altercation, members and associates of the Cossacks and
Bandidos brandished and used firearms, knives or other unknown edged weapons, batons, clubs,
brass knuckles, and other weapons. The weapons were used to threaten and/or assault the
opposing factions. Cossacks and Bandidos discharged firearms at one another. Members of the
Waco Police Department attempted to stop the altercation and were fired upon by Bandidos
and/or Cossacks. Waco Police Officers returned fire, striking multiple gang members. During
the exchange of gunfire, multiple persons where shot. Nine people died as a result of the
shooting between the members of the biker gangs. Multiple other people were injured as a result
of the altercation. The members and associates of the Cossacks and Bandidos were wearing
common identifying distinctive signs or symbols and/or had an identifiable leadership and/or
continuously or regularly associate in the commission of criminal activities. The Texas
Department of Public Safety maintains a database containing information identifying the
Cossacks and their associates as a criminal street gang and the Bandidos and their associates as a
criminal street gang.

After the altercation, the subject was apprehended at the scene, while wearing common identifying distinctive signs or symbols or had an identifiable leadership or continuously or regularly associate in the commission of criminal activities.

After the altercation, firearms, knives or other unknown edged weapons, batons, clubs, brass knuckles, and other weapons were recovered from members and associates of both criminal street gangs.

Multiple motorcycles with common identifying signs or symbols of the Cossacks and Bandidos and their associates were recovered at the scene. Additional weapons including: firearms, ammunition, knives, brass knuckles, and other weapons were found on the motorcycles.

_____
Complainant

SWORN TO AND SUBSCRIBED BEFORE ME BY SAID AFFIANT/COMPLAINANT ON THIS THE _18th_ DAY OF _MAY_, _2015_.

_____
JUSTICE OF THE PEACE
MCLENNAN COUNTY, TEXAS

# Appendix 2

FILED

JUN 1 6 2015

J.P. COURT, McLENNAN CO.
PRECINCT 1, PLACE 2

No. J12F15-177

| THE STATE OF TEXAS | * | JUSTICE COURT |
| VS | * | PRENCINCT 1 PLACE 2 |
| MATTHEW ALAN CLENDENNEN | * | MCLENNAN COUNTY, TX |

ORDER ON REQUEST TO RESET EXAMINING TRIAL SO THAT IS PROMPT

On the 16th day of June, 2015, the Court, after review and consideration of the Defendant's Request to Request Examining Trial, Denies said request.

Examining Trial remains set on, **Monday, August 10, 2015** at **2:00 p.m**. in Judge W.H. Peterson's Court at 501 Washington Ave. Room 108, Waco, TX.

SIGNED AND ENTERED THIS 16th day of June, 2015

W.H. PETERSON
JUSTICE OF THE PEACE
PRECINCT 1, PLACE 2
MCLENNAN COUNTY, TEXAS

# Appendix 3

No. 2015-1955-2

| STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| v. | § | 54TH JUDICIAL DISTRICT |
| | § | |
| MATTHEW ALAN CLENDENENN | § | |
| | § | MCLENNAN COUNTY, TEXAS |

## MOTION TO QUASH AND FOR PROTECTION OF EVIDENCE and MOTION TO ISSUE "GAG" ORDER FOR ALL PARTIES

COMES NOW The State of Texas, by and through her Criminal District Attorney of McLennan County, Texas, Abelino "Abel" Reyna and files this Motion to Quash and for Protection, and and Motion to Issue "Gag" Order for all Parties and shows unto the Court as follows:

I.
Background

On June 23, 2015 Matthew Alan Clendennan herinafter styled Defendant, through his attorney of record Clinton Broden, served a subpoena duces tecum on Patrick Keating commanding any and all videos of the events taking place at Twin Peaks in Waco, Texas from May 17, 2015 to May 24, 2015 to be produced June 26, 2015 in the 54th District Court of McLennan County, Texas at 9 A.M.. The subpoena commands that Patrick Keating is to bring the following to the hearing:

1. Any and all videos of the events taking place at the Twin Peaks location at 4671 S. Jack Kultgen Expressway Waco, TX 76706 taken from May 17, 2015 to May 24, 2015;

A copy of the subpoena and application is attached hereto as Exhibit "A."

II.
Improper and Prohibited Use of Subpoena Duces Tecum

2.1    As can be seen from the foregoing, the Subpoena Duces Tecum is nothing more than a broad and all-encompassing fishing expedition, and is an attempt to conduct pre-trial discovery

MOTION TO QUASH AND FOR PROTECTION

CERTIFIED DOCUMENT
PAGE ___ OF ___
DISTRICT CLERK OF
McLENNAN COUNTY, TEXAS

PAGE 1

under the guise of a subpoena for a hearing. Using a subpoena duces tecum for such purposes is improper. *See Luvano v. State*, 183 S.W.3d 918, 924-25 (Tex. App. – Eastland 2006, no pet.); *Ealoms v. State*, 983 S.W.2d 853, 859 (Tex. App.—Waco 1998, pet. ref'd).

2.2. A criminal defendant's right to pre-trial discovery is limited by Article 39.14 of the *Texas Code of Criminal Procedure*. *See Shpikula v. State*, 68 S.W. 3d 212, 221-22 (Tex. App.--- Houston [1st Dist.] 2002, pet. ref.); *Martin v. Darnell*, 960 S.W.2d 838, 842 (Tex. App. – Amarillo 1997, orig. proc.). Section 39.14 provides the exclusive means for pre-trial discovery. *See Shpikula v. State*, 68 S.W. 3d at 222. The limited right to pre-trial discovery does not include the right to use a subpoena duces tecum for a hearing as a "weapon" of discovery. *See Ealoms*, 983 S.W.3d at 859; *Luvano*, 183 S.W.3d at 924-25. *See also See Shpikula v. State*, 68 S.W. 3d at 222 (court did not commit error in refusing to allow defendant to discover information via a subpoena duces tecum under Chapter 24 of the *Code of Criminal Procedure*). Nothing in Chapter 24 or the Sixth Amendment allows a defendant to simply cast a net in the hope that something useful might be found. *See Shpikula v. State*, 68 S.W. 3d at 221-22; *Welch v. State*, 2011 W.L. 1364970*7 (Tex. App.---Texarkana 2011, pet. ref'd). *See also* 2 *Tex. Prac. Guide Crim. Prac. & Proc.* at Section 19:29 ("Subpoenas may not be used to enlarge a defendants' right to production as defined by *Tex. Code Crim. Proc. Ann.* art. 39.14. A subpoena is not to be used as a 'discovery weapon' but rather as an 'aid to discovery' and must be based on a showing of materiality and relevance. *Reece v. State*, 878 S.W.2d 320, 326 (Tex. App.—Houston [1st Dist.] 1994, no pet.) (quashing subpoena did not deny the defendant access to 'material' evidence); *Cruz v. State*, 838 S.W.2d 682, 685 to 686 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd).").

2.3 On its face the subpoena at issue exceeds the scope of any legitimate purpose under Chapter 24 and is an obvious attempt to conduct pre-trial discovery. Therefore, it should be

CERTIFIED DOCUMENT
PAGE 2 OF 12
DISTRICT CLERK OF
McLENNAN COUNTY, TEXAS

quashed. *See Luvano v. State*, 183 S.W.3d 918, 924-25 (Tex. App. – Eastland 2006, no pet.); *Ealoms v. State*, 983 S.W.2d 853, 859 (Tex. App.—Waco 1998, pet. ref'd).

## III.
## Pending Investigation

3.1    Again, nothing in the *Texas Code of Criminal Procedure* gives the defendant a general right of discovery outside of the confines of Art. 39.14. A criminal defendant has no right to generally peruse the records of law enforcement entities which were or are in any way connected with the criminal case. The criminal defendant obtains information from the state, and not by virtue of subpoenaing broad categories of records from third parties.

3.2    Furthermore, the broad and all-encompassing subpoena duces tecum relates to a pending investigation. There is no right under the Code or the Constitution for a criminal defendant to interject himself into a pending investigation by law enforcement and obtain records directly from law enforcement.

3.3    Allowing such a process would interfere with the investigation of criminal cases and the duties and functions of law enforcement officers. Should the release of this information be permitted, the State's investigation would be prejudiced and potentially compromised as witnesses could be attacked as to whether their recollection is based on actual events or on the events seen on a video source through Clendennen's planned release to the media.



CERTIFIED DOCUMENT
PAGE 3 OF 12
DISTRICT CLERK OF
McLENNAN COUNTY, TEXAS

## IV.
## Materiality and Relevance

4.1 Defendant's application for subpoena contains no indication as to how the broad categories of requests are relevant or material. The right to have the state disclose favorable evidence does not entitle the defense to conduct his own search to argue the relevance of particular information. *See Martin v. Darnell*, 960 S.W.2d at 840-842. That is, the specific materiality and relevance of information must exist *before* the request, not after the defendant has perused through the information requested. *Id.*

4.2 Even a cursory review of the multiple categories of requests and their breadth shows that the Subpoena Duces Tecum is not a request for material and relevant information; rather it is a request for information so that the defense can determine its usefulness. That is not the purpose of a subpoena duces tecum under Chapter 24; and a subpoena duces tecum cannot be used to circumvent the discovery process. *See Ealoms*, 983 S.W.2d at 859; *Luvano*, 183 S.W.3d at 924-25.

## V.
## MOTION TO ISSUE "GAG" ORDER FOR ALL PARTIES

5.1 The State further moves that the court impose a gag order on all parties as the defendant, through his attorney has stated that his intent is not limited to the legal proceedings. In a KCEN television interview on June 25, 2015, Attorney Clinton Broden said, "if and when he gets the video, he will make it public. That's the plan," said Broden. The State requests that the Court order all parties involed in this case to strictly adhere to the letter and spirit of the Texas Disciplinary Rules of Professional Conduct governing Trial Publicity. Specifically all attorneys shall refrain from making "extrjudicial statements that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know

CERTIFIED DOCUMENT
PAGE 4 OF 2
DISTRICT CLERK OF
McLENNAN COUNTY, TEXAS

that it will have a substantial likelihood of materially prejudicing an adjudicatory proceeding." Tex. R. Prof'l Conduct Rule 3.07.

A copy of said article is attached hereto as "Exhibit B".

WHEREFORE, Movant respectfully requests that the Subpoena and Subpoena Duces Tecum be QUASHED and that the Court enter an order that Movant is not required to comply therewith.

Respectfully Submitted;

Abelino "Abel" Reyna
Criminal District Attorney
McLennan County, Texas
219 North Sixth Street, Suite 200
Waco, Texas 76701
Phone (254) 757-5084
Fax (254) 757-5021

Mark Parker
Assistant Criminal District Attorney
State Bar Number 15494360

CERTIFIED DOCUMENT
PAGE 5 OF 12
DISTRICT CLERK OF
McLENNAN COUNTY TEXAS

## CERTIFICATE OF SERVICE

I do hereby certify that on the date set forth next to my signature below, a duplicate original or true and correct copy of the document to which this certificate is attached was served on defendant's counsel of record in this case. The names and addresses of the attorney or attorneys served, and the manner of service, are indicated below:

*Via fax:* _____
*Via hand delivery:* ____✓____
Clinton Broden
2600 State Street
Dallas, Texas 75204

Date:   June 30 , 2015

Mark Parker
Assistant Criminal District Attorney
McLennan County, Texas

CERTIFIED DOCUMENT
PAGE 6 OF 12
DISTRICT CLERK OF
McLENNAN COUNTY, TEXAS

# EXHIBIT "A"

CERTIFIED DOCUMENT
PAGE 7 OF 12
DISTRICT CLERK OF
MCLENNAN COUNTY, TEXAS

# THE STATE OF TEXAS
## SUBPOENA DUCES TECUM

To the Sheriff or any Constable of MCLENNAN COUNTY, TX: GREETING

YOU ARE COMMANDED to Summon:

## PATRICK KEATING
### MCLENNAN COUNTY, TX

to be and personally appear before the Honorable District Court of McLennan County, 54th District, to be held in the City of WACO, on the **INSTANTER** then and there to give evidence in a certain case pending, wherein **THE STATE OF TEXAS**, is plaintiff, and **MATTHEW ALAN CLENDENNEN** is Defendant in cause number **2015-1955-2** at the instance of the **DEFENSE**, and that he bring with him and produce in said Court, at said time and place, **ANY AND ALL VIDEOS OF THE EVENTS TAKING PLACE AT TWIN PEAKS IN WACO, TEXAS FROM MAY 17, 2015-MAY 26, 2015** desired as evidence in said above numbered and entitled cause.

"It is an offense for a person to intentionally influence or coerce a witness to testify falsely or to elude legal process. It is also a felony to harm or threaten to harm a witness or prospective witness in retaliation for or on account of the service of the person as a witness or to prevent or delay the person's service as a witness to a crime."

"Si una persona intencionalmente obliga o ejerce influencia sobre un testigo para que diera declaraciones falsas o para que evadiera el proceso legal, es un delito. También es un crimen hacer daño o amenazar a un testigo o a uno quien posiblemente podría ser un testigo para vengarse o por razón del uso de esa persona como testigo o para prevenir o demorar el uso de esa persona como testigo a un crimen."

Herein fail not, but have you then and there this Writ, with your return thereon as the law directs.

Given under my hand, this **22ND** day of **JUNE, 2015.**

JON R. GIMBLE
Clerk, District Courts,
McLennan County, Texas

By: _Jessica Schrader_

ATTORNEY: CLINTON BRODEN, 2600 STATE ST., DALLAS, TX 75204

SERVE: PATRICK KEATING, MCLENNAN COUNTY, TX

APPEAR: **INSTANTER**
(54ᵗʰ District Court is located on the 3ʳᵈ floor of the McLennan County Courthouse at 500 Washington Ave. in WACO, Texas)

### SHERIFF'S RETURN

Came to hand the ____ day of _____, ____, at ____ o'clock ___ M. and executed by delivering to the following within named witness in person in MCLENNAN COUNTY, TX, a true copy of this subpoena at the following times, to-wit:

PATRICK KEATING at ____ o'clock __ M., _____, _____.
Name of Witness

_____
Deputy

_____
Sheriff


CERTIFIED DOCUMENT
PAGE 8 OF 12
DISTRICT CLERK OF
McLENNAN COUNTY, TEXAS

To the Clerk of the District Court of McLennan County, Texas.

IN THE CASE OF THE STATE OF TEXAS VS. _Matthew Alan Clendennen_

Cause No. _2015-1437-2_ you will please issue subpoena(s) in accordance with the law for the following named witness(s) to appear before the Honorable 19th/54th District Court, at the County Courthouse, Waco, Texas on the _____ day of _Instanter_, 20___ at _____ o'clock ___M.:

1. _Patrick Reatiag_ residing in _____ County, Texas

whose avocation is that of _____

and whose location is _____ said subpoena to order said

witness to bring the following: _Any and all videos of the events taking place at Twin Peaves in Waco, Texas from May 17, 2015 - May, 24, 2015._

2. _____ residing in _____ County, Texas

whose avocation is that of _____

and whose location is _____ said subpoena to order said

witness to bring the following: _____

_____

_____

3. _____ residing in _____ County, Texas

whose avocation is that of _____

and whose location is _____ said subpoena to order said

witness to bring the following: _____

_____

The testimony of said witness(s) is believed to be material to the:  State/**Defense** (circle one)

_Clinton Broden_
_2600 State Street Dallas, TX 75204_
Attorney Name & Address
For State/**Defense**

Sworn to and subscribed before me this _19_ day of _June_, A.D., 20_15_ @ _4:54_ o'clock _P_ M.

JON R. GIMBLE
CLERK, DISTRICT COURTS
McLENNAN COUNTY, TEXAS

Instructions for pick-up:

Call _Office of Callunin & King_ at _254-717-8600_ (Picked up at _____ on _____)
or
Deliver to _____ for service  (Delivered at _____ on _____)


CERTIFIED DOCUMENT
PAGE 9 OF 12
DISTRICT CLERK OF
McLENNAN COUNTY, TEXAS

# EXHIBIT "B"

CERTIFIED DOCUMENT
PAGE 10 OF 12
DISTRICT CLERK OF
McLENNAN COUNTY, TEXAS





## City of Waco Moves to Block Subpoena for Twin Peaks Restaurant Surveillance Video

*Posted: Jun 25, 2015 3:49 PM CST*
*Updated: Jun 26, 2015 10:39 AM CST*



WACO -- An attorney for a man charged in the May 17th Twin Peaks shootings filed a subpoena to get surveillance video from the Waco restaurant during the shootings.

F. Clinton Broden, who represents Matthew Alan Clendennen, sent a press release late Thursday stating that the City of Waco moved to quash or block the subpoena. According to the release, the subpoena was served on Patrick Keating, an attorney with Haynes & Boone in Dallas and the attorney for the Waco Twin Peaks franchisee. Mr. Keating had previously agreed to accept service of the subpoena on behalf of his client and to produce the video in compliance with the subpoena by 9:00 am on June 26, 2015.

The City of Waco moved to quash the subpoena Thursday afternoon, the reason given in the motion, in part, was "release of the information would interfere with the investigation."

According to Broden's press release, the only party that can move to quash a subpoena is the party to whom the subpoena is issued, in this case the Waco Twin Peaks franchisee.

"It is troubling that the City of Waco would go to such lengths to suppress this video," said Broden. "The Waco Police have repeatedly given the public contradictory information about the events at Twin Peaks and have said that the video will support its current version of the facts, yet they have now taken this extraordinary measure to interfere with the subpoena process," he added.

Broden said if, and when he gets the video, he will make it public.

"That's the plan," said Broden.

Broden said they needed the video to show there was no probable cause to arrest his client for the shooting, and they're hoping to loosen Clendennen's bond conditions at a hearing August 10th. He said lawyers for Twin Peaks said the video corroborates Clendennen's



story that he had nothing to do with the incident.

Broden said he would be at the courthouse in downtown Waco Friday morning, along with lawyers for Twin Peaks, to either get a copy of their video as promised, or to have hearing on the City of Waco's motion to quash the subpoena for the footage.

KCEN tried reaching the City of Waco's attorney Thursday evening, but it was after hours.

Waco Police issued a separate press release Thursday stating they would not be releasing any additional details about what happened in the months leading up to the shootings between the two biker gangs, the Bandidos and Cossacks, allegedly involved in the shootings.

The press release also stated that Waco Police detectives have been completing search warrants for the cell phones that were confiscated in the incident.

Offers and Articles From Around the Web                                    ADVERTISEMENT



See What Your Childhood Crushes Look Like Now!

Shocking! The Government Does Not Want You To...

30 News Anchors With Jaw Dropping Beauty

Just When You Thought Family Pictures Couldn't...

15 Famous Celebs Who Have Committed Horrible...

These Girls Were What Adolescent Boys Dreamed...

**worldnow**   All content © Copyright 2000 - 2015 WorldNow and KCEN. All Rights Reserved. Users of this site agree to the Terms of Service, Privacy Notice/Your California Privacy Rights, and Ad Choices.

CERTIFIED DOCUMENT
PAGE 12 OF 12
DISTRICT CLERK OF
McLENNAN COUNTY, TEXAS

# Appendix 4



# The State of Texas

v.

## Matthew Alan Clendennen



FILED

2015 JUN 30 AM 10: 20

JON R. GIMBLE
DISTRICT CLERK
McLENNAN CO. TX.

---

**In the 54th District Court
McLennan County,
Texas
Cause No. 2015-1955-2**

---

### Order

This Court has a duty to preserve the defendant's right to a fair trial by an impartial jury and, if possible, to ensure that potential jurors will not be prejudiced by pretrial publicity. The Court is also mindful of the First Amendment rights of the parties, counsel for the parties, the media, as well as the Open Courts Provision of the Texas Constitution. In efforts to balance these sometimes competing interests, courts have found that prior restraint may be imposed only in extraordinary circumstances, and only if there is the threat of imminent, severe harm. Accordingly, before issuing a gag order, a court must find that extensive media coverage will harm the judicial process.

This Court takes judicial notice of

1) the unusually emotional nature of the issues involved in this case;

2) the extensive local and national media coverage this case has already generated; and

3) the various and numerous media interviews with counsel for the parties that have been published and broadcast by local and national media.

The Court FINDS that counsels' willingness to give interviews to the media would only serve to increase the volume of pre-trial publicity.



CERTIFIED DOCUMENT
PAGE____1____OE__3__
DISTRICT CLERK OF
McLENNAN COUNTY, TEXAS

172039061

The Court FURTHER FINDS that if counsel for the parties continue to grant interviews to the media, the pre-trial publicity will interfere with the defendant's right to a fair trial by an impartial jury.

The Court FURTHER FINDS that no less restrictive alternative means exists to treat the specific threat to the judicial process generated by this pre-trial publicity.

The Court FURTHER FINDS that an order restricting extra-judicial commentary by counsel for the parties is necessary to preserve all venue options and a delay in proceedings would not lessen the publicity generated by this case.

Accordingly, in its sound discretion and in light of the relevant facts and circumstances of this particular case, the Court ORDERS, ADJUDGES and DECREES that prior to and during the trial of this case

1. All attorneys involved in this case shall strictly adhere to the letter and spirit of the provisions of the Texas Code of Professional Responsibility governing comments to the media. Specifically, all attorneys shall refrain from making "extrajudicial statements that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicatory proceeding." TEX. DISCIPLINARY R. PROF'L CONDUCT 3.07.

2. All attorneys, their staffs, and law enforcement officers involved in this case shall not discuss this case with the media.

3. Witnesses shall not discuss this case with the media when they have *previously* given statements:

   a. to law enforcement personnel,

   b. to representatives of the District Attorney's Office; or


CERTIFIED DOCUMENT
PAGE 2 OF 3
DISTRICT CLERK OF
McLENNAN COUNTY, TEXAS

    c.   who have testified in investigative or adjudicative proceedings.

4.   Witnesses who give statements to law enforcement personnel, representatives of the District Attorney's Office, or who testify in investigative or adjudicative proceedings *after the date of entry* of this order shall not discuss this case with the media.

5.   This Order shall not be interpreted to prohibit attorneys from communicating with the parties in order to prepare for trial, nor shall it be interpreted to prohibit the third parties from attending any live sessions before the Court or from publishing any information they have already obtained or may obtain in the future. The term "third parties" includes any person or organization, not a party, not an attorney for a party, or not a person employed by the parties or attorneys for the parties for the purpose of assisting in this litigation.

This Court shall entertain reasonable requests to modify this Order as the need arises.

SIGNED June 30, 2015

Matt Johnson,
Judge of the 54th District Court
McLennan County, Texas


CERTIFIED DOCUMENT
PAGE ___ OF ___
DISTRICT CLERK OF
McLENNAN COUNTY, TEXAS

# Appendix 5



# Appendix 6



# IN THE
# TENTH COURT OF APPEALS

---

## No. 10-15-00235-CR

## IN RE MATTHEW ALAN CLENDENNEN

---

## Original Proceeding

---

## MEMORANDUM OPINION

---

Relator's Petition for Writ of Mandamus was filed on July 1, 2015. Without recitation of the facts of the case and discussion of the applicable law, of which the parties are well aware, based on this Court's opinion in *In re Graves*, and the authorities cited therein, Respondent abused its discretion by issuing its June 30, 2015 gag order. *In re Graves*, 217 S.W.3d 744 (Tex. App.—Waco 2007, orig. proceeding). Accordingly, we conditionally grant Relator's Petition for Writ of Mandamus. A writ will issue only if Respondent fails to vacate its gag order issued on June 30, 2015 and notify this Court in

writing that it has done so within 7 days from the date of this opinion. Relator's motion

for stay is dismissed as moot.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
(Justice Davis concurring without an opinion)
Pet. conditionally granted
Motion dismissed as moot
Opinion delivered and filed August 7, 2015
Do not publish
[OT06]



# Appendix 7

ACCEPTED
10-15-00235-CR
TENTH COURT OF APPEALS
WACO, TEXAS
7/1/2015 2:18:33 PM
SHARRI ROESSLER
CLERK

# COURT OF APPEALS FOR THE
# TENTH DISTRICT OF TEXAS

FILED IN
10th COURT OF APPEALS
WACO, TEXAS

7/1/2015 2:18:33 PM

SHARRI ROESSLER
Clerk

## CASE NO.

## 05-15-00355-CR

## IN RE MATTHEW ALAN CLENDENNEN
### Relator

**Trial Cause No. 2015-1955-2**
**In the 54th District Court, McLennan County**
**Honorable Matt Johnson, Presiding**

## EMERGENCY PETITION FOR WRIT OF MANDAMUS

**F. CLINTON BRODEN**
**TX Bar No. 24001495**
**Broden, Mickelsen, Helms & Snipes, LLP**
**2600 State Street**
**Dallas, Texas 75204**
**(214) 720-9552**
**(214) 720-9594(facsimile)**

**Attorney for Matthew Alan Clendennen**

## IDENTITY OF PARTIES AND COUNSEL

**Relator:**                                    Matthew Alan Clendennen

**Trial Counsel for Relator:**          F. Clinton Broden
Broden, Mickelsen, Helms & Snipes, LLP
2600 State Street
Dallas, Texas 75204

**Appellate Counsel for Relator:**     F. Clinton Broden
Broden, Mickelsen, Helms & Snipes, LLP
2600 State Street
Dallas, Texas 75204

**Respondent:**                            Honorable Matt Johnson
54th District Court
501 Washington Ave., Suite 305
Waco, Texas 76701

**Real Party in Interest:**               State of Texas

**Counsel for Real Party in Interest:** McLennan County District Attorney
219 N. 6th St
Waco, Texas 76701

i

# TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES AND COUNSEL.................................................................i

TABLE OF CONTENTS.......................................................................................ii

TABLE OF AUTHORITIES.................................................................................iv

STATEMENT OF THE CASE................................................................................1

STATEMENT OF JURISDICTION.......................................................................3

ISSUES PRESENTED............................................................................................4

STATEMENT OF FACTS......................................................................................5

    I. The State's Publicity Machine...................................................................5

        A. Patrick Swanton.........................................................................5

        B. Abel Reyna................................................................................6

        C. Brent Stroman...........................................................................6

    II. The Gag Order Motion...........................................................................7

    III. The Gag Order....................................................................................7

    IV. What the Gag Order Does Not Cover.....................................................8

SUMMARY OF THE ARGUMENT......................................................................10

ARGUMENT.......................................................................................................11

    I. The District Court Did Not Have Jurisdiction Over the Case to Enter the Gag Order..............................................................................................................12

II. The District Court's Gag Order Violates Article 1, Section 8 of the Texas Constitution..................................................................................................14

III. The District Court's Gag Order Violates the First Amendment to the United States Constitution..............................................................................14

    A. Constitutional Consideration and the Three Key Cases....................14

    B. Applying the Principles to the Instant Case........................................18

PRAYER.............................................................................................................21

VERIFICATION.................................................................................................22

CERTIFICATE OF SERVICE............................................................................23

CERTIFICATE OF COMPLIANCE...................................................................24

# TABLE OF AUTHORITIES

**Page**

## Cases

*Clendennen v. Chavez, et. al.,* No. 6:15-cv-00173 (W.D. Tex.)....................................9

*Cook v. State,* 902 S.W.2d 471 (Tex. Crim. App. 1995)..............................................13

*Davenport v. Garcia,* 837 S.W.2d 73 (Tex. 1992)....................................11, 14, 15, 16

*DC Waco Restaurant, Inc. D/b/a Don Carlos Restaurant vs. Peaktastic Beverage, LLC D/B/A Twin Peaks Restaurant, et. al.,* No. DC-15-05787.......................................9

*Ex Parte Clear,* 573 S.W.2d 224 (Tex. Crim. App. 1978)..............................................13

*Ex Parte Port,* 674 S.W.2d 772 (Tex. Crim. App. 1984)...............................................13

*Gentile v. State Bar of Nev.,* 501 U.S. 1030 (1991).........................................................12

*Haskett v. Harris,* 567 S.W.2d 841 (Tex. App. Corpus Christi 1978).........................12

*In re Benton,* 238 S.W.3d 587 (Tex. App. - Houst. [14th] 2007)...............11, 14, 16, 17

*In re Graves,* 217 S.W.3d 744 (Tex. App. - Waco 2007)...............................14, 16, 17

*In re Houston Chronicle Pub. Co.,* 64 S.W.3d 103 (Tex. App. Houst (14th 2001)......16

*Orr v. International Bank of Commerce,* 649 S.W.2d 769 (Tex. App. - San Antonio 1983)....................................................................................................................................12

*Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555 (1980)....................................14

*San Antonio Express-News v. Roman,* 861 S.W.2d 265 (Tex. App. San Antonio 1993)....................................................................................................................................14

*State v. Clendennen,* No. 2015-1955-2................................................................2, 8, 19

*United States v. Schroeder*, 6:93-0046 (W.D. Tex.)........................................................20

*United States v. Tsarnaev,* No 1:13-cr-10200 (D. Mass.)............................................20

## **Other Authorities**

Article 1, Section 8 of the Texas Constitution.......................................................*passim*

First Amendment to the United States Constitution................................................*passim*

Louis D. Brandeis, *Other People's Money-and How Bankers Use it* (1914)..............11

Tex. R. Prof'l Conduct Rule 3.07...............................................................................7, 16

Tex. Gov't Code § 22.221...............................................................................................3

## STATEMENT OF THE CASE

Matthew Alan Clendennen was arrested, along with 176 other motorcyclists, at Twin Peaks restaurant in Waco, Texas on May 17, 2015. The arrest was based upon a "fill in the name" criminal complaint where the same complaint was used to arrest 177 people with only the names being changed. *See* Appendix 1.[1]

There has been no indictment in the case. On May 22, 2015, Mr. Clendennen requested an examining trial. The hearing was set for August 10, 2015- almost three months from the date it was requested. Mr. Clendennen later filed his Request to Reset Examining Trial So That [It] Is Prompt, that request was quickly denied by Justice of the Peace Walter H. "Pete" Peterson. *See* Appendix 2.

Mr. Clendennen later sought, via a subpoena *duces tecum*, to obtain a copy of Twin Peaks' own surveillance tape. The subpoena was sought, *inter. alia.*, in connection with motions by Mr. Clendennen to amend his bond conditions. It was sought under the District Court case number 2015-1955-2 which was assigned in connection with Mr. Clendennen's original Application for Writ of Habeas Corpus Seeking Bail Reduction which had previously been granted.

The City of Waco filed a motion to quash the subpoena and the Court set a

---

[1]Because the Appendix requires certified copies and will also contain a DVD, the Appendix will be filed under separate cover.

hearing on the City's motion for June 30, 2015. On the morning of the hearing, the McLennan County District Attorney's Office filed its own motion to quash approximately ten minutes before the start of the hearing and, in that motion, requested a comprehensive gag order be entered. *See* Appendix 3. Ultimately, the District Court found that the City of Waco did not have standing to contest the subpoena, ordered the video to be produced to the defense, and entered the comprehensive gag order prepared by the McLennan County District Attorney's Office in *State v. Clendennen*, No. 2015-1955-2. *See* Appendix 4.

## STATEMENT OF JURISDICTION

The Court has jurisdiction of this Petition pursuant to Tex. Gov't Code § 22.221.

The Petition is also brought under Article 1, Section 8 of the Texas Constitution and the First Amendment to the United States Constitution.

## ISSUES PRESENTED

I.      Whether the District Court had jurisdiction to enter the gag order.

II.      Whether the District Court's gag order violates Article 1, Section 8 of the Texas Constitution.

III.      Whether the District Court's gag order violates the First Amendment to the United States Constitution.

.

## STATEMENT OF FACTS

### I. The State's Publicity Machine[2]

#### A. Patrick Swanton

On May 17, 2015-May 18, 2015, the Waco Police held at least five different

press conferences before local, national and international media painting the indelible

image that all members of motorcycle clubs were actually members of "biker gangs."

For example, Patrick Swanton, the police spokesperson, told the media:

> • If you looked at the motorcyclists on that day "you would know they
> were not people you wanted to be around."
>
> • The motorcyclists were not at Twin Peaks to "drink beer and eat
> barbeque."
>
> • The motorcyclists all participated one way or the other in what
> happened at Twin Peaks.
>
> • The motorcyclists came to Twin Peaks with "violence in mind."

In fact, Officer Swanton repeatedly told the hordes of media that this was the worst

crime scene he and other member of law enforcement had witnessed in their careers

that spanned several decades. Also, he described the incident as starting inside the

---

[2]Mr. Clendennen acknowledges that the videos described herein were not before the trial court. The problem, however, is that all the trial court had before it was the *one* article cited in the State's Motion for a Gag Order. Mr. Clendennen submits that this one article was hardly a sufficient basis on which to impose a wholesale gag order. Nevertheless, to the extent Respondent argues that he could take "judicial notice" of other unidentified media, so too could this Court take judicial notice of the media described herein.

5

Twin Peaks, however, that was later shown to be false when the Associated Press obtained a copy of the Twin Peaks video and reported on its contents. *See* Appendix 5 (videos B-D).

### B. Abel Reyna

Not to be outdone, on May 21, 2015, McLennan County District Attorney Abel Reyna gave an eighteen minute television interview featuring witty sound bites in which he told the media:

- Based on what he saw, nothing was telling him that all 177 motorcyclists were not guilty.

- The motorcyclists were guilty because they were not "acting like victims."

- "I'll bet on our own gang before I bet on their gang."

- The motorcyclists were not at Twin Peaks "just to eat lunch."

- The motorcyclists would not get away with what they did "not in this county, not on my watch."

*Id.* (Video A).

### C. Brent Stroman

On June 12, 2015, Waco Chief of Police Brent Stroman gave a press conference in which he repeatedly reiterated that the police had probable cause to arrest the 177 motorcyclist, that he had seen the video of what happened and he wanted it released to the public because "it would show what happened." *Id.* (Video

6

E)

## II. The Gag Order Motion

As noted above, the State filed its Motion for a Gag Order minutes before a hearing on the City of Waco's motion to quash Mr. Clendennen's subpoena *duces tecum* to Twin Peaks to produce a copy of its surveillance video. The entirety of the State's argument in that motion was as follows:

> The State further moves that the court impose a gag order on all parties as the defendant, through his attorney has stated that his intent is not limited to legal proceedings. In a KCEN television interview on June 25, 2015, Attorney Clinton Broden said, "if and when he gets the video, he will make it public. That's the plan," said Broden. The State requests that the Court order all parties involved in this case to strictly adhere to the letter and spirit of the Texas Disciplinary Rules of Professional Conduct governing Trial Publicity. Specifically all attorneys shall refrain from making "extrajudicial statements that a reasonable person would expect to be disseminate by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicatory proceeding." Tex. R. Prof'l Conduct Rule 3.07

*See* Appendix 3. The only media attached to the motion was the KCEN article referenced in its motion.

## III. The Gag Order

The Court's gag order, prepared by the District Attorney's Office, takes judicial notice of:

1) the usually emotional nature of the issues involved in the case;

7

2) the extensive local and national media coverage the case has already generated; and

3) the various and numerous media interviews with counsel for the parties that have been published and broadcast by local and national media.

*See* Appendix 4. Based upon this alone the Court ordered a complete gag order on 1) the parties in the *Clendennen* case; 2) the attorneys in the *Clendennen* case; 3) law enforcement as it relates to the *Clendennen* case; and 4) any witnesses in the *Clendennen* case that previously made statements to law enforcement or the District Attorney's Office.

## IV.  What the Gag Order Does Not Cover

In the State's haste to get a gag order in place, what the gag order does not cover is almost important as to what it does cover.

First, it does not cover

1) the parties in the 176 other motorcyclist cases;

2) the attorneys, including the District Attorney's Office, in the 176 other motorcyclist cases;

3) law enforcement as it relates to the 176 other motorcyclist cases; and

4) any witnesses in the 176 other motorcyclist cases that previously made statements to law enforcement or the District Attorney's Office.

Second, the gag order is not clear if it covers statements in connection with a

8

civil case Mr. Clendennen filed in federal court against the City of Waco, the County of McLennan and various officials. *See Clendennen v. Chavez, et.al.,* No. 6:15-cv-00173 (W.D. Tex.).

Third, the gag order does not cover the parties in the litigation in the 54th District Court of Dallas County between Twin Peaks and a neighboring restaurant over whether the neighboring restaurant loss business as a result of what happened at Twin Peaks. *See DC Waco Restaurant, Inc. D/b/a Don Carlos Restaurant vs. Peaktastic Beverage, LLC D/B/A Twin Peaks Restaurant, et. al.,* No. DC-15-05787.

## SUMMARY OF THE ARGUMENT

Because there has yet to be an indictment in this case vesting the district court with full jurisdiction over this case, the district court was without jurisdiction to impose a comprehensive gag order in the case.

In any event, the gag order imposed violated Mr. Clendennen's right to free speech under both the Texas Constitution and the United States Constitution. The findings made by the District Court in adopting the State's gag order are insufficient to establish that any unidentified pretrial publicity in this case has risen to the level that it poses "imminent" and "severe" harm to a "fair and impartial trial.'" More importantly, given the unique nature of the case, which has 176 identical companion cases, a gag order is likely to be ineffectual and is not the "lest restrictive means" to prevent any identified harm. Respondent abused his discretion in entering the gag order in this case.

10

## ARGUMENT

"Mandamus is the appropriate method by which to challenge a gag order." *In re Benton*, 238 S.W.3d 587, 592 (Tex. App.–Houst.[14th] 2007).[3] Moreover, a "gag order" will normally entitle a Relator to "emergency relief." *Davenport v. Garcia*, 837 S.W.2d 73 (Tex. 1992).

Whether real or perceived, there is a noxious odor surrounding the investigation by the Waco Police and the McLennan County District Attorney's Office with regard to the "Twin Peaks Shooting" and the wholesale arrest of 177 motorcyclists based on identical, "fill-in-the-name" criminal complaints. Nevertheless, as Justice Brandeis said: "Publicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman." Louis D. Brandeis, *Other People's Money-and How Bankers Use It* (1914).

This sentiment is still recognized today by both federal and state courts. As noted by the United States Supreme Court and discussed in *Benton*, "the criminal justice system exists in a larger context of a government ultimately of the people, who wish to be informed about happenings in the criminal justice system, and, if

---

[3]"To demonstrate the right to mandamus relief, the relator must establish that (a) the trial court clearly abused its discretion, and (b) the relator has no adequate remedy by appeal." *Benton*, 238 S.W.3d at 592.

11

sufficiently informed about those happenings, might wish to make changes in the system." *Gentile v. State Bar of Nev.,* 501 U.S. 1030, 1070 (1991).

> **The judicial system, and in particular our criminal justice courts, play a vital part in a democratic state, and the public has a legitimate interest in their operations**. "[I]t would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted." Public vigilance serves us well, for "[t]he knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power.... Without publicity, all other checks are insufficient: in comparison of publicity, all other checks are of small account." As we said in *Bridges v. California,* limits upon public comment about pending cases are "likely to fall not only at a crucial time but upon the most important topics of discussion....["]

*Id.* at 1035 (citations omitted) (emphasis added).

It is against this backdrop that Mr. Clendennen urges the Court to review his state and federal constitutional challenges to the gag order urged by the McLennan County District Attorney's Office and entered by the District Court.

## I. The District Court Did Not Have Jurisdiction Over the Case to Enter the Gag Order[4]

As noted above, this case is pending based upon a criminal complaint signed

---

[4]Mr. Clendennen acknowledges that he did not object below to the District Court's jurisdiction to enter the gag order, nevertheless, "[l]ack of jurisdiction in the District Court is fundamental error and is subject to review for the first time on appeal." *Haskett v. Harris,* 567 S.W.2d 841, 843 (Tex. App. Corpus Christi 1978). *See also, Orr v. International Bank of Commerce,* 649 S.W.2d 769, 771 (Tex. App.-San Antonio 1983).

by a Justice of the Peace. *See* Appendix 1. The gag order was entered in connection with Mr. Clendennen's attempt to obtain, via a subpoena *duces tecum*, a copy of Twin Peaks' surveillance tape. The subpoena was sought, *inter. alia.*, in connection with motions by Mr. Clendennen to amend his bond conditions. It was sought under the District Court case number 2015-1955-2 which was assigned in connection with Mr. Clendennen's original Application for Writ of Habeas Corpus Seeking Bail Reduction which had previously been granted.

Mr. Clendennen submits that the District Court's jurisdiction to consider an Application for Writ of Habeas Corpus and later to amend bond conditions set pursuant to that Application does not give the District Court full jurisdiction to impose a gag order in a case pending before a Justice of the Peace. On point is *Ex Parte Clear*, 573 S.W.2d 224 (Tex. Crim. App. 1978) where the Court of Criminal Appeals held that, when a criminal complaint is pending before a Justice of the Peace, a district court does not have general jurisdiction to enter orders in the case. Indeed, the filing of an indictment is essential to vest a trial court with jurisdiction over a felony offense. *See Cook v. State*, 902 S.W.2d 471, 475 (Tex. Crim. App. 1995); *Ex Parte Port*, 674 S.W.2d 772, 779 (Tex. Crim. App. 1984).

In sum, because no indictment has been filed against Mr. Clendennen, the District Court had jurisdiction only to rule on matters related to the Application for

Writ of Habeas Corpus such as bond amounts and bond conditions and, in this case, the subpoena application made in connection with motions to amend Mr. Clendennen's bond conditions.

## II. The District Court's Gag Order Violates Article 1, Section 8 of the Texas Constitution.

## III. The District Court's Gag Order Violates the First Amendment to the United States Constitution.

### A. Constitutional Consideration and the Three Key Cases

The seminal case on gag orders in the State of Texas is *Davenport v. Garcia*, 834 S.W.4 (Tex. 1992). Although that is a civil case, its holdings have been repeatedly applied to gag orders imposed in criminal cases. *See Benton*, 238 S.W.3d at 594; *In re Graves*, 217 S.W.3d 744, 753 (Tex. App.-Waco 2007); *San Antonio Express-News v. Roman*, 861 S.W.2d 265, 268 (Tex. App. San Antonio 1993). Indeed, this Court has noted that "[t]he Court of Criminal Appeals often relies on the decisions of the Supreme Court of Texas when addressing matters of state constitutional law." *Graves*, 217 S.W.3d at 749.[5]

The Texas Supreme Court in *Davenport* made clear that, despite the broad

_____

[5]If anything, gag orders should face even stricter scrutiny in criminal cases because "it would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 574 (1980).

14

freedom of speech protections given United States citizens under the First Amendment to the United States Constitution, Article 1, Section 8 of the Texas Constitution gives even greater free speech protections to citizens of our state. *Davenport*, 834 S.W.2d at 12 ("When a state court interprets the constitution of its state merely as a restatement of the Federal Constitution, it both insults the dignity of the state charter and denies citizens the fullest protection of their rights."); *Id.* at 7 ("The history of [Article 1, Section 8 ] provision is a rich one, and its language demonstrates Texas' strong and longstanding commitment to free speech. By the plain language of our constitution, this fundamental liberty 'shall forever remain inviolate.'").

The Texas Supreme Court held that, to justify a gag order, it must be shown (1) that, without the gag order, an imminent and irreparable harm to the judicial process will deprive litigants of a just resolution of their dispute, and (2) the judicial action represents the least restrictive means to prevent that harm. *Id.* at 10. In fact, with regard to the first prong, the Supreme Court made clear that the harm must be "imminent" and "severe." Ultimately, the *Davenport* court found that a gag order providing:

> 1. Counsel in this case, present and former, are expressly ORDERED to refrain from discussing or publishing in writing or otherwise, any matters of this case with any persons other than their clients, agents, or employees in the necessary course of business in this case.

15

2. Counsel is ORDERED to refrain from any public comment, casual or otherwise concerning the facts of this case or the conduct of counsel in this case other than in a court hearing.

violated the right to free expression guaranteed under the Texas Constitution. *Id.* at 11. ("'[T]he argument of convenience can have no weight as against those safeguards of the constitution which were intended by our fathers for the preservation of the rights and liberties of the citizen.'" (citation omitted)).

Following the Texas Supreme Court's *Davenport* case, there were two cases where gag orders were challenged by a criminal defendant that are on point. The first was *Benton* from the Fourteenth Court of Appeals and the second was *Graves* from this Court. These two cases can be immediately distinguished from *In re Houston Chronicle Pub. Co.*, 64 S.W.3d 103 (Tex. App. Houst (14th 2001), one of the only cases upholding a gag order, because in that case (the Andrea Yates case) "the prior restraint on speech was not the subject of a constitutional challenge from any individual who was the subject of the order." *Benton*, 238 S.W.3d at 601, n. 25.[6]

*Benton* involved a gang fight in Houston. *Benton*, 238 S.W.3d at 588. The State requested a gag order and, much like here, alleged that the defense made "extra judicial statements to the media" that violated the Texas Disciplinary Rules of

---

[6]Nevertheless, as an indication that little reflection was given to the serious free speech implications of the gag order imposed in the instant case, the instant gag order has identical findings as the gag order in *Houston Chronicle*. It stands to reason that the free speech principles announced in *Davenport* do not permit "one size fits all" gag orders.

16

Professional Conduct. *Id.* at 951. After the District Court entered a comprehensive gag order, the defendant sought mandamus and argued that the gag order violated her free speech rights under the Texas Constitution and that the evidence was insufficient to establish the likelihood of the required level of prejudice to the integrity of the judicial process or the imminence of any such harm. *Id.* at 592.

The *Benton* court ultimately determined that the gag order was unconstitutional even under the slightly more lenient First Amendment test because the trial court's findings when imposing the gag order did not "establish, as a 'constitutional minimum,' that the order was narrowly-tailored to avert a substantial likelihood of material prejudice." *Id.* at 597. It first noted that the gag order "primarily focused on relator's right to a fair trial and an impartial jury." *Id.*[7] It then noted that the district court "presumed that publicity is inherently prejudicial to a criminal defendant." *Id.* The *Benton* court ultimately determined that the district court abused its discretion in entering the gag order at issue in that case. *Id.* at 601.

This Court in *Graves* dealt with the following findings in connection with a gag order:

> 1. The prior proceeding in this cause of action, and other related actions of which the Court takes judicial notice;

---

[7]This is similar to the instant gag order which purports to be concerned with "pre-trial publicity that will interfere with *the defendant's* right to a fair trial by an impartial jury."

17

2. The pre-trial publicity which has already occurred in this case, which includes local and national newspaper coverage, of which the Court takes judicial notice;

3. The rulings and opinions which set out the inherent power of the Court to control its own proceedings, and to assure that a fair trial is provided for the State and the Defendant in this cause;

4. Whereupon the Court does find that it is necessary to enter this Restrictive Order to protect and provide for a fair and impartial trial in this cause of action.

*Id.* at 746. Like Mr. Clendennen, "Graves at least implicitly dispute[d] that pretrial publicity in his case ha[d] risen to the level that it pose[d] 'imminent and irreparable harm' to a 'fair and impartial trial.'" *Id.* at 752 Ultimately, this Court concluded that the Respondent trial judge " failed to make 'specific findings' detailing the nature or extent of the pretrial publicity in Graves's case or how the pretrial publicity or the record from his prior prosecution will impact the right to a fair and impartial jury." *Id.* at 752-53.

## B. Applying the Principles to the Instant Case

It appears the State believes that it is consistent with constitutional principles for it to be allowed to give repeated interviews designed to portray 177 member of motorcycle clubs to be "gang members" who came to Twin Peaks on May 17, 2015 only with "violence in mind" and not "just to eat lunch." Then the State believes that ten minutes before an unrelated hearing it can, for the first time, complain about the

18

publicity that casts its previous accounts of what occurred at Twin Peaks into serious doubt. The unvarnished truth of the matter is that the State had absolutely no concern with Matthew Clendennen's right to a fair trial when it held its repeated press conferences earlier in this case and certainly its concern now for "the defendant's right to a fair trial by an impartial jury" is transparently hollow.

It is clear that in the rushed way the State presented its gag order request, Respondent was not able to make true "specific findings" as to whether pretrial publicity would truly impact the right to a fair and impartial jury and whether it was the lest restrictive means to prevent any harm. That is likely why the findings in a case involving 177 motorcyclist are *identical* to the findings in a case involving a mother withe severe psychological problems who murdered her children.

Moreover, in this case, a gag order is simply impossible and unworkable given the State's decision to charge 177 motorcyclists in identical criminal complaints. As noted above, the gag order only applies to attorneys and parties in *State v. Clendennen*. It does not apply to the attorneys and parties in the other 176 cases.[8] Moreover, it does not apply to related litigation occurring in other state and federal courts. Ultimately, the gag order will collapse under the unprecedented action by the

---

[8]Technically, the District Attorney's Office and the Waco Police can continue to have press conference and simply preface any remarks with "this just applies to the other 176 bikers and not Matthew Alan Clendennen."

19

State to charge 177 with the exact same offense.

In sum, the findings by the District Court are insufficient to establish that any unidentified pretrial publicity in this case has risen to the level that it poses "imminent" and "severe" harm to a "fair and impartial trial.'" More importantly, given the unique nature of the 177 cases, a gag order is likely to be ineffectual and is not the "lest restrictive means" to prevent any identified harm. The gag order in this case offends Mr. Clendennen's free speech rights under Texas Constitution and the United States Constitution and Respondent abused his discretion in imposing such an order.[9]

---

[9]To put the gag order in this case, which was entered only a month after Mr. Clendennen's arrest, into perspective, a review of the docket sheets in the Branch Davidian case reveals that a "gag order" was not entered until approximately eight months after charges were filed and just shortly before trial. *See United States v. Schroeder*, 6:93-cr-00046 (W.D. Tex). Moreover, in the "Boston Bomber" case there does not appear to have been any gag order entered. *See United States v. Tsarnaev*, No. 1:13-cr-10200 (D. Mass.).

## **PRAYER**

For the foregoing reasons, the trial court's gag order should be vacated and the writ of mandamus issued.

Respectfully submitted,


/s/F. Clinton Broden
F. CLINTON BRODEN
TX Bar No. 24001495
Broden, Mickelsen, Helms & Snipes, LLP
2600 State Street
Dallas, Texas 75204
(214) 720-9552
(214) 720-9594(facsimile)

Attorney for
Matthew Alan Clendennen

21

## VERIFICATION

STATE OF TEXAS

COUNTY OF DALLAS

F. Clinton Broden, being duly sworn, under oath says: "I am the petitioner in this action and know the contents of the above Emergency Petition for Writ of Mandamus and, according to my belief, the facts stated in the Petition are true."

 

_____

F. Clinton Broden

 

SUBSCRIBED AND SWORN TO BEFORE ME THIS 1st DAY OF July, 2015.



SARAH E KLEIN
My Commission Expires
June 7, 2017

_____
Signature of Notary Public

22

## CERTIFICATE OF SERVICE

I, F. Clinton Broden, do hereby certify that, on this 1st day of July, 2015, I caused a copy of the foregoing document to be served by overnight mail, postage prepaid, on:.

Honorable Matt Johnson
54th District Court
501 Washington Ave., Suite 305
Waco, Texas 76701

McLennan County District Attorney
219 N 6th St
Waco, Texas 76701

/s/ F. Clinton Broden
F. Clinton Broden

23

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Tex. R. App. P.9.4 because this brief contains __4,113_____ words, excluding the parts of the brief exempted by the rule.

/s/ F. Clinton Broden
F. Clinton Broden

24

**DECLARATION REGARDING APPENDIX PURSUANT TO TEXAS RULE OF APPELLATE PROCEDURE 52.3**

I, Abelino "Abel" Reyna, do hereby certify that Appendix 1 is a true, correct and exact copy of the criminal complaint filed in this matter.

I, Abelino "Abel" Reyna, do hereby certify that Appendix 2 is a true, correct and exact copy of the order received from the Justice of the Peace Court in this matter.

I, Abelino "Abel" Reyna, do hereby certify that Appendix 3 is a true, correct and exact copy of the motion to quash and motion to issue a gag order and attached exhibits filed by the State in this matter.

I, Abelino "Abel" Reyna, do hereby certify that Appendix 4 is a true, correct and exact copy of the gag order issued by Judge Matt Johnson in this matter.

I, Abelino "Abel" Reyna, do hereby certify that Appendix 5 is a true, correct and exact copy of videos copied from www.kxxv.com and www.kcentv.com. In particular:

Video A:
http://www.kxxv.com/global/video/flash/popupplayer.asp?ClipID1=11521196&h1=Full%20interview%20with%20McLennan%20County%20DA%20Abel%20Reyna&vt1=v&at1=News&d1=1102100&LaunchPageAdTag=Search%20Results&activePane=info&rnd=47679083

Videos B:
http://www.kxxv.com/global/video/flash/popupplayer.asp?ClipID1=11508009&h1=Monday%20Biker%20Gang%20Press%20Conference&vt1=v&at1=News&d1=2070172&LaunchPageAdTag=Search%20Results&activePane=info&rnd=45596985

Video C:
http://www.kxxv.com/global/video/flash/popupplayer.asp?ClipID1=11511950&h1=New%20details%20emerge%20of%20what%20started%20biker%20gang%20shootout&vt1=v&at1=News&d1=1481874&LaunchPageAdTag=Search%20Result&activePane=info&rnd=91422993

Video D:
http://www.kxxv.com/global/video/flash/popupplayer.asp?ClipID1=11505906&h1=Biker%20Gang%20Shooting%20Presser%204&vt1=v&at1=News&d1=571172&LaunchPageAdTag=Search %20Results&activePane=info&rnd=76876797

Video E: http://www.kcentv.com/story/29307580/waco-police-release-new-details-on-twinpeaks-shooting

I, Abelino "Abel" Reyna, do hereby certify that Appendix 6 is a true, correct and exact copy of the order from the 10th Court of Appeals conditionally granting the writ of mandamus in this matter.

I, Abelino "Abel" Reyna, do hereby certify that Appendix 7 is a true, correct and exact copy of the petition for writ of mandamus filed by Matthew Clendennen in the 10th Court of Appeals under appellate case no. 10-15-00235-CR.


Respectfully Submitted:

**ABELINO 'ABEL' REYNA**
Criminal District Attorney
McLennan County, Texas


/s/ Abelino Reyna
**ABELINO 'ABEL' REYNA**
Criminal District Attorney
219 North 6th Street, Suite 200
Waco, Texas 76701
[Tel.] (254) 757-5084
[Fax] (254) 757-5021
[Email]
abel.reyna@co.mclennan.tx.us
State Bar No. 24000087

### CERTIFICATE OF SERVICE
I certify that I caused to be served a true and correct copy of this Appendix by electronic service or email or hand delivery on:

Respondent, 10th Court of Appeals Waco, Texas by hand delivery per request of Chief Justice Tom Gray

Attorney, F. Clint Broden, for Real Party in Interest, Matthew Clendennen at clint@texascrimlaw.com

Real Party in Interest, Judge Matt Johnson, 54th District Court, McLennan County Texas at matt.johnson@co.mclennan.tx.us

DATE: 8/11/15                                    /S/ ABELINO 'ABEL' REYNA
                                                 ABELINO 'ABEL' REYNA