# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00044-CR

---

**In re Jamie Fletcher**

---

**FROM THE 299TH DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-DC-85-079142, THE HONORABLE KAREN SAGE, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Jaime Fletcher was convicted of the offense of attempted aggravated sexual assault. *See* Tex. Penal Code §§ 15.01, 22.011, .021. After his conviction, Fletcher filed a motion requesting the appointment of counsel under the provisions of the Code of Criminal Procedure pertaining to post-conviction DNA testing, *see* Tex. Code Crim. Proc. arts. 64.01-.05, and the district court entered an order granting that request. Subsequently, Fletcher's appointed counsel filed a motion for post-conviction DNA testing of certain items collected during the underlying criminal investigation. After reviewing the record and the parties' arguments, the district court denied the motion. Fletcher appeals the district court's order denying his motion. We will affirm the district court's order.

## BACKGROUND

Fletcher was charged with attempting to commit aggravated sexual assault against then sixteen-year old A.V. in Austin, Texas, in 1985. *See* Tex. Penal Code §§ 15.01, 22.011, .021. The indictment also alleged that Fletcher had previously been convicted of the felony

offense of aggravated robbery. During the trial, A.V.; A.V.'s mother, H.V.; Officer Steve Crumley; and other law-enforcement officials all testified. At the end of the guilt-or-innocence phase, the jury found Fletcher guilty of the charged offense. At the end of the punishment phase, the jury found the enhancement allegation to be true and sentenced Fletcher to sixty years' imprisonment. *See id.* § 12.33. The district court rendered its judgment of conviction in a manner consistent with the jury's verdicts. This Court affirmed Fletcher's conviction. *See Fletcher v. State*, No. 03-86-00088-CR (Tex. App.—Austin Jan. 7, 1987) (not designated for publication).

Several decades later, Fletcher filed a motion for post-conviction DNA testing asking the district court to order the testing of the following items collected during the police investigation: a metal pipe found in A.V.'s bedroom, a pocketknife found outside A.V.'s home near her bedroom window, bedding from A.V.'s room, and a cigarette butt. The State filed a memorandum opposing the request for DNA testing and attached affidavits from the evidence-control specialist for the Austin Police Department and from a criminal investigator for the Travis County District Attorney's Office specifying that the agencies did not have any physical evidence relating to the case. In addition, the State attached a list of exhibits admitted into evidence during the underlying trial that was prepared by the court reporter and submitted to the district court clerk. That list specifies that a pipe and a knife were admitted as exhibits during the trial.

After considering the parties' arguments, the district court denied the motion and issued findings of fact and conclusions of law determining that the requirements for post-conviction DNA testing had not been met, that Fletcher failed to establish that identity "is an issue in this case," and that he failed to show that "he would not have been convicted" if DNA

2

testing performed on the items produced exculpatory results. Accordingly, the district court determined that it did "not have the authority to order post-conviction DNA testing."

Fletcher appeals the district court's order. *See* Tex. Code Crim. Proc. art. 64.05.

**GOVERNING LAW AND STANDARD OF REVIEW**

Chapter 64 of the Code of Criminal Procedure governs post-conviction DNA testing. *See* Tex. Code Crim. Proc. arts. 64.01-.05. Chapter 64 "is simply a procedural vehicle for obtaining evidence" to be used in a later habeas proceeding, *In re Garcia*, 363 S.W.3d 819, 822 (Tex. App.—Austin 2012, no pet.), "authorizes DNA testing in cases in which the applicant meets the requirements enumerated," *id.* at 821-22 (citing Tex. Code Crim. Proc. art. 64.03), and allows appellate courts to review a trial court's order denying DNA testing, Tex. Code Crim. Proc. art. 64.05.

A convicted person "may request forensic DNA testing only of evidence . . . that was secured in relation to the offense that is the basis of the challenged conviction and was in the possession of the state during the trial of the offense" but "was not previously subjected to DNA testing" or was previously subjected to testing but can now "be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test." *Id.* art. 64.01(b). Once a motion is filed, the trial court must "provide the attorney representing the state with a copy of the motion" and "require the attorney representing the state to . . . deliver the evidence to the court, along with a description of the condition of the evidence" or "explain in writing to the court why the state cannot deliver the evidence to the court." *Id.* art. 64.02.

3

The Code of Criminal Procedure outlines the requirements that must be satisfied before DNA testing may be ordered. *Id.* art. 64.03. In particular, the court must find that "the evidence . . . still exists and is in a condition making DNA testing possible," that "there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing," and that "identity was or is an issue in the case." *Id.* art. 64.03(a)(1); *see Ex parte Gutierrez*, 337 S.W.3d 883, 891 (Tex. Crim. App. 2011). In addition, the "convicted person" must establish "by a preponderance of the evidence that" he "would not have been convicted if exculpatory results had been obtained through DNA testing." Tex. Code Crim. Proc. art. 64.03(a)(2); *see also Dinkins v. State*, 84 S.W.3d 639, 643 (Tex. Crim. App. 2002) (explaining that "[a] trial court is never required to grant a convicted person's request for testing absent" showing that "there is a reasonable probability that the person would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing"). In other words, the convicted person must show "that there is 'greater than a 50% chance that he would not have been convicted if DNA testing provided exculpatory results.'" *Ex parte Gutierrez*, 337 S.W.3d at 899 (quoting *Prible v. State*, 245 S.W.3d 466, 467-68 (Tex. Crim. App. 2008)). "Texas courts have consistently held that a movant does not satisfy his burden under Article 64.03 if the record contains other substantial evidence of guilt independent of that for which the movant seeks DNA testing." *Swearingen v. State*, 303 S.W.3d 728, 736 (Tex. Crim. App. 2010).

When reviewing a trial court's decision regarding DNA testing, appellate courts "defer to the trial court's determination of historical facts, and its application of law to the facts if it turns on credibility and demeanor, and review de novo applications of law to the undisputed facts," *Caddie v. State*, 176 S.W.3d 286, 289 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd), "including the ultimate question of whether the trial court was required to grant a motion for

4

DNA testing," *Flores v. State*, 150 S.W.3d 750, 752 (Tex. App.—San Antonio 2004, no pet.); *see also id.* (explaining that "[t]he scope of evidence that an appellate court may review on appeal from the denial of a post-conviction motion for DNA testing is not limited to evidence relating to the motion and/or hearing on the motion for DNA testing"). Under that standard, reviewing courts "defer to a trial court's finding as to whether the claimed DNA evidence exists and is in a condition to be tested." *Caddie*, 176 S.W.3d at 289.

## DISCUSSION

In his sole issue on appeal, Fletcher challenges the propriety of the district court's order denying post-conviction DNA testing on the pocketknife, pipe, bedding, and cigarette butt collected during the criminal investigation in the underlying case.

### Cigarette Butt and Bedding

As set out earlier, the State submitted affidavits from employees for the Austin Police Department and the Travis County District Attorney's Office averring that neither agency has possession of any evidence pertaining to the underlying offense. In addition, the State filed the exhibit list for the underlying trial, which did not list the cigarette butt or the bedding as exhibits that were admitted at trial. *See* Tex. Code Crim. Proc. art. 64.02. Accordingly, the State urged in its memorandum opposing testing that Fletcher's motion should be denied with respect to the cigarette butt and the bedding because those items are not in the possession of the State.

A trial court is only required to order post-conviction DNA testing if the relevant statutory requirements are met, including the requirement that there be a showing that the evidence still exists and is in a condition that makes testing possible. *See id.* art. 64.03(a)(1)(A)(i). "Affidavit testimony from a relevant witness that no biological evidence from

5

the case is maintained or possessed is sufficient, absent any contrary evidence, to support denial of a motion for forensic DNA testing," *Lewis v. State*, 191 S.W.3d 225, 228 (Tex. App.—San Antonio 2005, pet. ref'd), and the State is not required to present an affidavit "from every laboratory and police agency in the region," *Caddie*, 176 S.W.3d at 289. Fletcher did not offer any evidence contradicting the State's assertion that the bedding and the cigarette butt were not in the possession of the agencies investigating the offense and prosecuting the underlying case.

In light of our standard of review, we conclude that the evidence submitted by the State establishing that it was not in possession of the bedding and the cigarette butt was sufficient to support the district court's determination that the requirements for ordering post-conviction DNA testing with regard to those items were not met. *See Nelson v. State*, No. 03-12-00187-CR, 2014 WL 902497, at *3 (Tex. App.—Austin Mar. 5, 2014, no pet.) (mem. op., not designated for publication).

**Pipe and Pocketknife**

When challenging the portion of the district court's order denying testing on the pipe and pocketknife, Fletcher alleges that the identity of the person who committed the offense "was a principal issue at trial," that the pipe and pocketknife were collected by the police during the investigation but were not subjected to DNA testing, "that there is a reasonable likelihood that the above listed items contain biological material that could be tested for DNA," and that "there is a reasonable likelihood" that "development of DNA evidence would show" that he "was not the assailant in this case" and "would have been acquitted of the offense." Regarding the likelihood that exculpatory test results would have led to his acquittal, Fletcher refers to testimony presented during the underlying trial. For example, Fletcher notes that the testimony

6

presented at trial established that the pocketknife was found outside A.V.'s bedroom window and that the pipe was found next to her bed. *See Fletcher*, No. 03-86-00088-CR. Additionally, Fletcher highlights that the evidence presented at trial established that the attempted assault occurred at night in A.V.'s room while she was asleep, that A.V. was not wearing her glasses, that she only saw the assailant from the back, that she could not make out his face, and that she initially told the police that she was not sure if she could identify Fletcher as the offender. Further, Fletcher urged in his motion that he consistently denied any culpability and that no fingerprints were found on either the pipe or pocketknife recovered during the investigation. Accordingly, Fletcher contends that the evidence tying him to the offense was disputed and weak and that exculpatory DNA testing on the items found near the location of the offense would likely have resulted in his acquittal.

However, evidence beyond that referenced by Fletcher was presented during the trial establishing his guilt. In her testimony, A.V. explained that she was unable to close the window to her bedroom on the night in question before going to sleep because the window was stuck, that she woke up when she felt someone on top of her trying to remove her clothing, that the man was naked, that she felt his erect penis on her leg, that she screamed for her mother, that the man threatened to hurt her if she did not remain quiet, that her mother came to her room and turned on the lights, and that the man left the home carrying his white underwear in his hand. Next, A.V. testified that the man reentered the home shortly after leaving, that he was wearing his underwear at that time, that he left the home once again, that the police arrived quickly after he left for the second time, and that the police found a man in the area later identified as Fletcher and brought him to her house to ask her if Fletcher was the man who tried to assault her. When describing the assailant, A.V. admitted that she typically wears glasses but was not wearing them

7

at the time in question; however, she also stated that she knew the man was African American because of the texture of his hair, that the man had facial hair, that he smelled like alcohol, and that he had a "beer belly." Additionally, although A.V. admitted that she was initially unsure whether Fletcher was the assailant when the police brought him to her house, she also testified that she was able to identify him after hearing his voice. Further, A.V. identified Fletcher as the offender during the trial and picked him out of a photo lineup after the night in question.

In addition, A.V.'s mother, H.V., provided testimony linking Fletcher to the offense. Specifically, she stated that she saw a man on top of A.V. after she responded to her daughter's plea for help, that the man was African-American, that the man was naked, that she was able to see the man's face, that the man left when she yelled at him to leave A.V. alone, that the man returned while she was on the phone with the police, that the police responded quickly to the scene, that the police found Fletcher in the area, and that she identified Fletcher as the offender. When describing Fletcher's appearance after the police found him in the neighborhood, H.V. testified that Fletcher was wearing shorts and nothing else.

After A.V. and H.V. finished their testimonies, Officer Crumley was called as a witness to describe his observations on the night in question. For instance, Officer Crumley related that he arrived on the scene four minutes after the 911 call was made, that he saw an African-American man later identified as Fletcher in the middle of the road running away from A.V.'s residence, that Fletcher smelled strongly of alcohol, that Fletcher "had a pot belly" and a "scruffy growth of beard," and that Fletcher was wearing tan shorts with white underwear sticking out but was not wearing a shirt, shoes, or socks. Regarding the events that occurred after he arrived at A.V.'s home, Officer Crumley stated that he noticed that the screen to the window had been taken off, that there was a pocketknife near the window, that there was a pipe

8

near A.V.'s bed, and that his investigation revealed that Fletcher was the owner of both the pipe and the pocketknife.

Moreover, we note that although Fletcher urges that the pipe and pocketknife were likely used by the perpetrator on the night in question, he does not assert or refer to any evidence indicating that those items came into contact with any bodily fluid belonging to the offender or to A.V. Instead, Fletcher seems to be asserting that DNA from the offender could have been transferred to the objects when the offender held them.

The Court of Criminal Appeals has explained that the type of DNA testing requested by Fletcher in this case has questionable probative value. Specifically, the Court of Criminal Appeals recently stated as follows:

> "[T]ouch DNA poses special problems because 'epithelial cells are ubiquitous on handled materials,' because 'there is an uncertain connection between the DNA profile identified from the epithelial cells and the person who deposited them,' and because 'touch DNA analysis cannot determine when an epithelial cell was deposited.'" *Hall v. State*, 569 S.W.3d 646, 658 (Tex. Crim. App. 2019). Consequently, we said, "the significant possibility of [touch] DNA being deposited by an innocent person reduces the probative value of any [touch] DNA test result." *Id.*

*Dunning v. State*, 572 S.W.3d 685, 693 (Tex. Crim. App. 2019).

Our review of the trial record reveals that there is a significant possibility that DNA may have been deposited by an innocent person after the offense in question. Although no testimony was presented during the underlying proceeding specifically addressing the way the pocketknife and pipe were collected and subsequently stored, the record seems to indicate that those items were handled by individuals not wearing gloves during the trial and subjected to fingerprint analysis. In fact, the prosecutor warned one of the witnesses that the witness might

9

get residual fingerprint powder on his hands while holding one of the items. Accordingly, any test result indicating the presence of DNA from someone other than Fletcher on those items would seem to have little probative value in the circumstances present here.

In light of the strong evidence of Fletcher's guilt that is independent of any potential DNA results and in light of the seemingly diminished probative value of any potentially exculpatory results, we conclude that the district court did not err by determining that the statutory requirements for DNA testing were not met because Fletcher failed to establish by a preponderance of the evidence that he would not have been convicted if DNA testing performed on the pipe and pocketknife excluded him as a contributor to the resulting DNA profile. *See Swearingen*, 303 S.W.3d at 738 (overruling issue alleging that trial court erred by denying motion for DNA testing, in part, "[b]ecause of the overwhelming evidence of guilt independent of any potentially exculpatory DNA testing"); *Leal v. State*, 303 S.W.3d 292, 300-01 (Tex. Crim. App. 2009) (noting that even if additional testing excluded movant "as a contributor, it cannot be said that such a result 'establishes by a preponderance of the evidence that the person would not have been convicted'" (quoting Tex. Code Crim. Proc. art. 64.03(a)(2)(A))); *see also Luvano v. State*, 183 S.W.3d 918, 923 (Tex. App.—Eastland 2006, no pet.) (concluding that DNA testing would not have contradicted overwhelming evidence of guilt).

For all these reasons, we overrule Fletcher's issue on appeal.

## CONCLUSION

Having overruled Fletcher's issue on appeal, we affirm the district court's order denying post-conviction DNA testing.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed:   February 14, 2020

Do Not Publish